## APRIL TERM, 1869.

---

## JOSEPH CARDINAL, Respondent, v. THOMAS J. EDWARDS, Appellant.

RIGHT OF PROPERTY ON EXECUTORY SALE OF CHATTELS. Cardinal agreed to sell, transfer, and convey to Archambeauld a team of horses as soon as certain specified installments of price should be paid, and in the meanwhile to allow Archambeauld to have possession of and work the team until default should be made in any one of the installments; said possession, however, not to lessen or impair Cardinal's title to the property so long as any installment should remain due: *Held*, that until the installments were paid, the contract was executory, and the right of property remained in Cardinal, and could not be held as against him under an execution against Archambeauld.

RIGHT OF PROPERTY ON CONDITIONAL SALE. A conditional sale of personal property passes no title to the vendee which can be taken by his creditors until the performance of the conditions, unless there be a waiver of the condition by an absolute and unconditional delivery of the property.

STATUTORY LIEN FOR KEEPING ANIMALS LOST BY SURRENDER OF POSSESSION. Where a stable-keeper boarded a team of horses, but allowed them every day to be driven away to work, and on one occasion after being so driven away they were not returned: *Held*, that though he might under the statute (Statutes of 1866, 65) have retained possession of the horses, and insisted upon his lien, yet, having allowed them to be driven away, he relinquished possession and thereby lost his right of lien.

Cardinal *v.* Edwards.

FIXING FUTURE TIME OF PAYMENT DESTROYS LIEN. The fixing of a future time of payment for the keeping or boarding of animals, such as an agree. ment to pay on the first of each month, destroys the lien contemplated by the Statute of 1866. (Statutes of 1866, 65.)

APPEAL from the District Court of the Second Judicial District, Ormsby County.

In May, 1868, Eugene Archambeauld presented himself at the hay-yard of Jens C. Sorrensen in Carson City, represented that he had purchased a six-horse team, and made an arrangement with. Sorrenson to have the animals fed there, agreeing to pay the charges therefor on the first of every month. The team was engaged, with Sorrensen's knowledge and consent, in hauling wood to Silver City, Gold Hill, and other places, and stopped and was fed at the hay-yard; part of the time every night, and part of the time every second or third night, for about a month and a half, Archambeauld during the whole time having the absolute and ex-¬ clusive control of it, directing its movements, receiving the proceeds of its labor, and paying a part ·of the bill for feeding. On July 17th, 1868, the team was driven from the yard with a load of wood as usual,.Archambeauld being in charge. Sorrensen was present at the time, but had no intimation that it was being removed *not to return.* On that or the next night Archambeauld, without having returned to the yard, absconded, leaving the team at the Half-way House, between Virginia City and Carson; and the next day Joseph Cardinal took possession of it, claiming the same as his own property.

On July 20th, Sorrensen commenced suit before a Justice of the Peace against Archambeauld, to recover two hundred and sixty-five dollars and seventy-five cents, the balance on his feed bill up to July 17th, and caused the animals to be attached; in which suit he obtained judgment against Archambeauld for the amount of his bill and costs, and was declared to hold a. special statutory lien upon the animals. Execution on that judgment being issued and placed in the hands of Thomas J. Edwards, the Sheriff of Ormsby County, he levied upon and seized possession of the animals under the writ.

Cardinal, whose relation to the property is stated in the opinion,

then commenced this action, which was replevin against the Sheriff, and obtained a judgment to the effect that he was the owner of and entitled to the possession of the property, and that Sorrensen had no right to it. From this judgment, and an order overruling his motion for a new trial, defendant appealed.

*Clayton & Davis,* for Appellant.

I. The sale of the property from Cardinal to Archambeauld was an absolute sale. There is no dispute that there was an immediate delivery, and an actual and continued change of possession of the property. It amounted to an absolute sale from Cardinal, on credit, to Archambeauld.

II. The written agreement, entered into between Cardinal and Archambeauld, was intended as a security to Cardinal for the debt; and under the well-established rule " that where the transaction resolves itself into a security, it is a mortgage," this agreement was, to all intents and purposes, a chattel mortgage, and as such was invalid as against Sorrensen. (Statutes of 1861, Chap. IX, Sec. 66; *Meyer* v. *Gorham*, 5 Cal. 324; *Hackett* v. *Manlove*, 14 Cal. 89.)

While this chattel mortgage was invalid as to third parties, it was valid as to the parties thereto; and Cardinal, having accepted a mortgage of the property from Archambeauld, thereby admits title in Archambeauld, and is estopped to set up and claim under his original title. (*Sprague* v. *Branch*, 3 Cushing, 575.)

III. In the action of replevin, the plaintiff recovers by the strength of his own title, (1 Ind. 54; 20 Conn. 364; 31 Ill. 120); and in the case at bar having admitted title in Archambeauld by accepting a mortgage, he can only claim under the mortgage, which was invalid as to third parties under the statute. In the action of replevin, the defendant may plead property in himself or in a stranger, and if he succeed on the trial he will be entitled to a return of the property, and to damages for the detention thereof.

It is not necessary that he connect himself with the title of the stranger. It is sufficient for him that the right of property is not in the plaintiff, who must recover on the strength of his own title. (1 Gilm. 365; 21 Wend. 205; 1 Pick. 257.) In the case at

bar, plaintiff had certainly no right to the immediate possession. He had simply taken possession of the property at the Half-way House the morning after Archambeauld absconded, without any warrant of law. It is true, he says that Archambeauld never made any of the payments called for in the written agreement; but at the time he took possession none of the installments were due unless it was the first, which was due on demand, and no demand was shown or default made. It is a well-settled rule that where a demand is necessary and is not made, or cannot be made, the party must resort to his bill.

IV. The statute entitled "An Act to Secure Liens to Ranchmen and other persons," (Statutes of 1866, 65) declares a lien upon animals to secure the feed-bill, authorizing their detention until all charges are paid, or until the animals can be sold to satisfy such claim; and further providing, that in the event of the removal of the animals by *any person*, without the knowledge and consent of the person feeding the same, the person so offending shall be liable to fine and imprisonment; but that nothing therein stated shall operate to release the owner from the lien. Is it not absurd to say that because Sorrensen was present when the team was driven away from his yard on July 17th, and did not object to its removal, that it was not removed without his knowledge and consent? It left with a load of wood as usual, and he supposed of course that it was leaving temporarily, as it had done fifty times before. He says that if he had been advised of Archambeauld's intention to remove the team not to return he would not have permitted it to leave until the balance was paid.

V. Sections sixty-four and sixty-six of the Statute of Frauds are designed to insure probity and fair dealing among men, by keeping the possession of personal property in the hands of the real owners; and to prevent a false credit being acquired by one party, having all the *indiciæ* of ownership, while the real title is in another. (*Doak* v. *Brubaker*, 1 Nev. 218.) The law is clear as regards the possession in chattel mortgages, and must apply equally to conditional sales of personal property. In the case at bar—even admitting that the written agreement between Cardinal and Archambeauld shows a conditional sale, and that no title

passed to Archambeauld—yet Cardinal voluntarily delivered the possession of the property to Archambeauld; and the latter was apparently vested, by the act of Cardinal, with all the rights of an absolute owner—which rights Archambeauld exercised absolutely for nearly two months, and thereby acquired a false credit.

Kent (3 Kent's Com. 498) lays down the rule, that where there has been a conditional sale and delivery of property, coupled with a condition that security shall be furnished or the property paid for at a future day, the right of the vendor will be good as against the buyer and his voluntary assignee, but not as against a *bona fide* purchaser from the vendor. (See also *Fleeman* v. *McKean*, 25 Barb. 484; *Hagerty* v. *Palmer*, 6 John's Ch. R. 437; *Hussey* v. *Thornton*, 4 Mass. 405; *Waitz* v. *Green*, 35 Barb. 590; *Callwell* v. *Bartlet*, 3 Duer, 352; *Smith* v. *Lynes*, 1 Seld. 42; 1 Paige, 312; 1 Edw. Ch. 146; 37 Barb. 509.)

*R. M. Clarke* and *T. D. Edwards*, for Respondent.

[No brief on file.]

By the Court, Lewis, C. J.:

The agreement entered into between the plaintiff and Archambeauld on the thirty-first day of May and which was afterwards on the sixth of July reduced to writing, was simply an executory contract of sale, to be executed or completed when the stipulated payments were made by the latter. That it was not the intention to transfer the title from the plaintiff to Archambeauld is a fact which admits of no doubt whatever, if the written instrument itself is to be received as evidence of the intention. The plaintiff by it "contracts, promises, and agrees to sell, transfer, and convey to the party of the second part" (Archambeauld) the property in question, "as soon as he shall have paid therefor," which he agreed to do in installments, as follows: Two hundred dollars on demand, one hundred dollars on the last day of July, and one hundred dollars on the last days of August, September, and October. Here is certainly no present sale or transfer of title. It is as clearly an executory contract of sale as language could have made it. The contract, however, further provides, that the party of the first part

(Cardinal) "hereby agrees to let the said party of the second part have the privilege of using and working the said wagon, animals, and harnesses, until such time as he shall be in default in making any of the stipulated payments—the said party of the second part keeping the said property in good working order and condition at his own cost and expense, and without charge against the first party. But this instrument is not intended to affect or in any manner lessen or impair the title of the said first party to the said property, so long as any portion of the said sum of six hundred dollars shall remain due from the party of the second part." By this latter clause of the agreement, Archambeauld had the right of possession of the property; but that right was subject to the condition of payment of the price at the specified times. There was certainly no transfer of the right of property by the instrument; and we apprehend the mere delivery of the possession to be held only upon condition could not operate to invest him with it. He was not even to have the possession if he failed to make payments of any of the installments of the purchase money. At the time this suit was brought he was in default, and had been for nearly a month. The title to the property remaining in Cardinal, it was not subject to levy and sale upon execution against Archambeauld. If Archambeauld ever had any interest which could be so taken, it was simply the right of possession until the last day of July, at which time there was a default in the payment of the installment then due. At that time, if not before, Cardinal became reinvested with the right of possession, and as this action was not commenced until the seventeenth of November—the day when the property was taken upon execution by the defendant—it is clear that the plaintiff should recover. If the transaction between Cardinal and Archambeauld were treated as a conditional sale, which is certainly the most favorable view for the defendant which can possibly be taken of it, still there can be no doubt of the plaintiff's right to recover: for it is a rule, as firmly established as any elementary principle of the law, that a conditional sale passes no title to the vendee which can be taken by his creditors until the performance of the condition, unless there be a waiver of the condition by an absolute and unconditional delivery of the property. (*Strong* v. *Taylor*, 2 Hill,

326; *Herring* v. *Poffock*, 15 New York, 409; *Barrett* v. *Pritch-ard*, 2 Pick. 512; *Coggell and Harfer* v. *New Haven Railroad*, 3 Gray, 545; *Hart et al.* v. *Carpenter*, 24 Conn. 427; 33 N. Hamp. 66.)

These cases are directly in point, and decisive of this branch of the case. But it is contended that Sorrensen, the plaintiff in the execution against Archambeauld, had under the statute of this State a lien on the property for the sum of two hundred and sixty-eight dollars, and the right to hold possession and sell the same to satisfy such claim. The statute referred to declares, that " any ranchman, or other person or persons, keeping corrals, livery or feed stables, or furnishing hay, grain, pasture, or otherwise board-ing any horse or horses, mule or mules, ox or oxen, or other animals, shall have a lien upon and retain possession of the same, or a suf-ficient number thereof, until all reasonable charges are paid, or suit can be brought and judgment obtained for the amount of such charges, and execution issued and levied on said property." It is true, under this statute, Sorrensen might have had a lien upon the animals, and held possession of them for the feed furnished while they were under Archambeauld's control—had he claimed such a right; but instead of doing so he relinquished the possession, or rather, allowed Archambeauld to take them away without inter-posing any objection, or even having claimed the right or declared his intention to hold them for his charges. A voluntary relinquish-ment or surrender of the possession always destroys the lien. (2 Kent's Commentaries, 887; 1 East, 4; 7 East, 5.)

That Sorrensen was not present when the animals were taken away can make no difference, for he had never pretended to claim a lien on them, and had always allowed them to be taken away every morning before as upon the last. Had he intended to claim a lien upon the property he should have made it known in some way. In fact nothing is clearer than that he had no intention of claiming such lien until he ascertained that Archambeauld had absconded and the plaintiff obtained possession of the animals. He cannot, therefore, say that they were taken from his possession by fraud, or force, or against his will. Had it been his will to hold possession he undoubtedly could have done so. So, too, unless the

statute changes the old rule, which it does not seem to do, the fixing a future time of payment as was done in this case, Archambeauld having agreed to pay the charges on the first of each month, destroyed Sorrensen's right of lien. (2 Kent's Commentaries, 886, 882; 4 Barn. & Ald. 50.) As the plaintiff was the owner, and in the possession of the property at the time it was seized under the execution against Archambeauld, it was unlawfully taken, and he is entitled to recover it. The judgment was right and must be affirmed.

JOHNSON, J., did not participate in the foregoing decision.