[No. 821.]

## DAVID ESTEY, Respondent, *v.* R. A. COOKE, Appellant.

Lien for Keeping Animals, when Lost.—The statutory lien (1 Com. L. 144–6) for keeping animals is lost when the possession is parted with. *Cardinal* v. *Edwards*, 5 Nev. 36, affirmed.

Statute of Frauds—Delivery and Actual Change of Possession.—The principles decided in *Gray* v. *Sullivan* (10 Nev. 416), and *Twist* v. *Kelley* (11 Nev. 382), as to what acts are necessary to constitute an actual change of possession adhered to upon the doctrine of *stare decisis*.

APPEAL from the District Court of the Third Judicial District, Lyon County.

The facts are stated in the opinion.

*Drake & Gaston*, for Appellant:

I. The transfer of the property, under the circumstances detailed in the evidence, is conclusively fraudulent and void under sections 60, 64 and 69 of the "act concerning conveyances," approved Nov. 5, 161; sec. 288, 292 Comp. L.; *Hulburd* v. *Bogardus*, 10 Cal. 518; *Richards* v. *Schroder*, 10 Cal. 431; *Doake* v. *Brubaker*, 1 Nev. 218; *Sharon* v. *Shaw*, 2 Nev. 289; *Lawrence* v. *Burnham*, 4 Nev. 361. The principles are elaborately discussed in Bump on Fraud. Con., citing innumerable cases, 152 to 160, and 173 to 175, and 230 *et seq.*, 477 *et seq.*

II. There is no evidence showing or tending to show that Dow was a bailee. He himself swears that Estey always had control of the teams; took them out and returned them at will. Dow had no lien upon the teams for stabling; for he never intimated any intention to claim one. He was away from the stable for days at a time, and he made no attempt to exercise control over the teams. The statute does not, of its own force, bestow a lien in favor of a stable-keeper. It was necessary for him to assert his right by words or acts, or both; he did neither. On the contrary, all his declarations establish his intention of disclaimer in respect to a lien. His every act and declaration is inconsistent with an intention to claim a lien on the horses for feed. (Schoaler on Pers. Prop. 494, 497.)

III. Even if Dow had secured a lien prior to the transfer, he waived and abandoned it when he agreed to "look to Estey for his pay." The debt upon which he could have claimed his lien was extinguished, and with the extinguishment of the debt, the lien expired; Eldridge no longer owed Dow. (4 Abb. Pr.; N. Y. Dig., new ed. 42, sec. 21; 2 Bouvier's Dic.; *Cardinal* v. *Edwards*, 5 Nev. 36, and authorities there cited.)

*Kelton & Thomas,* for Respondent:

I. When the vendee is in possession of property at the time of sale, there need be no formal delivery of possession. A declaration of sale by the vendor, and a surrender of control is all that can be done, and all that the law requires. (Bump on Fraud. Con. 183, and cases cited thereunder; Comp. L. sec. 146.)

Our statute of fraud requires "immediate delivery and actual and continued change of possession," only where the personal property sold is "in the possession or under the control" of the vendor. (Comp. L. sec. 292.) And if such control or possession is at all qualified, or less than absolute, the delivery must be subject to such qualification. And in this case, both vendor and vendee recognized Dow's lien, and the sale and delivery was made subject thereto, which fact precluded a removal without the commission of a crime.

Delivery must be subject to the rights of third parties. (Bump on Fraud. Con. secs. 206-7.)

By the Court, Beatty, J.:

The plaintiff in this case was the vendee of certain personal property which was attached by the defendant, as sheriff of Lyon county, at the suit of a creditor of plaintiff's vendor. The appeal is from a judgment for the value of the property attached, and from an order overruling defendant's motion for a new trial. One of the grounds of the motion for a new trial was that there was no evidence of an actual and continued change of possession of the property in question from the vendor to the vendee; and whether there was sufficient evidence on this point is the only question in the case that presents any difficulty. The question of actual fraud has been somewhat discussed, but as to this point it is only necessary to say that there was a substantial conflict of testimony in regard to the matters from which a fraudulent intent on the part of the plaintiff might have been inferred. Under the circumstances, although there may be some reason to suspect the *bona fides* of the transaction, the finding of the district court that it was not fraudulent in fact, is conclusive.

As to the other point—delivery and actual change of possession—the case was substantially as follows: The property sued for consisted of four or five horses, with their harness, etc., comprising a part of a team belonging to one Eldridge, and driven by the plaintiff as his servant. The team, when not employed, was left in the stable of one Dows at Silver City, and Eldridge was indebted to Dows in the sum of three hundred and sixty dollars, or thereabout, for the stabling and feeding of the animals. Dows was aware of the negotiations between the plaintiff and Eldridge for the purchase and sale of the teams, and it had been agreed between them that in case of a sale, plaintiff should assume and Dows look to him for the indebtedness of Eldridge on account of such stabling and feeding. It was further understood between plaintiff and Dows that the team should be kept at the latter's stable until his bill was

paid.   On the tenth of April, 1876, Eldridge and plaintiff agreed upon the terms of sale, and a bill of sale was executed and delivered about four o'clock in the afternoon.   The horses which had been driven by the plaintiff from Empire that morning were in the stable of Dows at the time of the sale, and the parties proceeded to the stable, where, in the presence of witnesses, Eldridge pointed out the property sold, and declared that he delivered it to plaintiff, and that it was his property.   This was all that was done in order to effect a delivery or change of the possession.   The horses and other property remained where they had been kept for months before, and, to all outward appearance, in exactly the same situation in which they had been before the sale.

As the party were leaving the stable they were met by the sheriff, who told them he had come for the purpose of attaching Eldridge's teams, but, being notified of the sale to the plaintiff, he did not take any of the property into his possession at that time.   He garnisheed plaintiff and went away.   Afterwards—about nine o'clock the same night—he came back and took away the property which is the subject of this suit.

It is claimed by the appellant that after the sale and before the levy of the attachment—an interval of four or five hours—there was ample time and opportunity for the respondent to have removed the horses to some other place than that in which they had been kept by his vendor, and that he was obliged to effect such removal as soon as he reasonably could, in order to satisfy the requirements of the statute.   The respondent, on the other hand, contends that, under any circumstances, it was unnecessary for him to remove the horses to another stable in order to effect a change of possession such as the statute requires; but that, even if it would ordinarily be necessary for the vendee of horses to remove them from the stable where they have been kept by the vendor, in this case he was excused from doing so by reason of the fact that Dows had a lien upon these horses for feeding and stabling them, and consequently they could not be removed without his consent.   It would seem from the testimony that Dows had no such lien under

the statute (C. L., secs. 144, 145, 146) as would have prevented plaintiff from removing the teams if he had desired to do so. They were kept in Dows' stable and fed with his grain, but they were apparently in the exclusive possession of Eldridge, by whom they were in constant use hauling wood on contracts with other parties. The lien, under the statute, is lost when the possession is parted with, (*Cardinal* v. *Edwards*, 5 Nev. 36), and it would seem, has no existence apart from possession in the lien claimant.

But, tested by the principles established in *Gray* v. *Sullivan* (10 Nev. 416), which was followed in *Twist* v. *Kelly* (11 Nev. 382), the acts of the plaintiff in this case were sufficient to satisfy the requirements of the statute as to change of possession. It cannot be said consistently with the rule of those cases that he was bound to remove the horses to another stable for the purpose of advertising the public of a change of ownership. I dissented from the opinion of the court in *Gray* v. *Sullivan*, and still think that a more stringent interpretation of the statute would be a better one; but, however that may be, the rule has been acted upon to an extent that brings it within the protection of the principle of *stare decisis* and, whether right or wrong originally, it would certainly be wrong to depart from it now.

The judgment of the district court is affirmed.