## UNITED STATES v. HENDERSON.
No. H–206.

District Court, D. Nevada.
Nov. 1, 1939.

Miles N. Pike, of Reno, Nev., for plaintiff.

N. J. Barry, of Reno, Nev., ·for defendant.

NORCROSS, District Judge.

This is a suit to recover an amount of grazing charges under the terms of a grazing permit issued to one M. Jauregui for the grazing of his sheep upon a portion of the Pyramid Lake Indian Reservation. The permit was of date January 26, 1929, and extended to January 31, 1934, for which annual payments were agreed to be made in advance in the sum of $5,557 per year. Payments were so made for the years 1929, 1930 and 1931. The amount sued for ·is for the remaining time of the permit in the sum of $11,114. Of date, December 23, 1926, the sheep were mortgaged to the Reno National Bank to secure a loan in the sum of $80,000, and the mortgage duly recorded. On March 10, 1933, the Receiver of the Bank took possession of the sheep under the terms of the mortgage, sold them, and applied the proceeds to the payment of the note secured by the said mortgage.

Plaintiff to establish the contention of the existence of an agistor's lien upon the sheep in question relies upon the provision of the State statute, Nevada Compiled Laws 1929, § 9046, reading: "Any ranchman, or other person or persons, keeping corrals, livery or feed stables, or furnish-

ing hay, grain, pasture, or otherwise boarding any horse or horses, mule or mules, ox or oxen, or other animal or animals, shall have a lien upon and retain possession of the same, or a sufficient number thereof, until all reasonable charges are paid; or suit can be brought and judgment obtained for the amount of such charges, and execution issued and levied on said property; * * *."

It is clear from a reading of the material portion of the section quoted that the grazing permit issued to the sheep owner, Jauregui, does not bring the case within the purview of the statute. Under the grazing permit the sheep were at all times in the possession and under the control of the owner. The statute deals with an opposite situation. Cardinal v. Edwards, 5 Nev. 36; Estey v. Cooke, 12 Nev. 276, 280. In this State, the total area is mainly mountainous suitable mainly for grazing purposes and, with the exception of similar lands within Indian Reservations or railroad land grants, is, in the main, a part of the Public Domain. In grazing live stock, particularly sheep and cattle, upon the Public Domain or upon other similar lands, whether in public or private ownership, the stock so grazed are rarely, if ever, in the possession and control of anyone but the owner or his lawful representative. The statute deals with situations where the possession and control is in the owner of the ground or place where the stock or animals are temporarily held for the benefit of the owner. Sheep, as in the instant case, are usually in large numbers owned by an individual, partnership or corporation, and their sustenance for the major portion or for the entire year must be found in grazing areas and from time to time are moved from one area to another. While in point of numbers there are more sheep than cattle grazed within this State, sheep are not specifically mentioned in the statute. If it had been the intent of the Legislature to grant a lien for grazing, where the possession and control remained in the owner of the animals so grazed, it is reasonable to assume that sheep, as well as cattle, would have been specifically mentioned and grazing privileges specifically referred to. It may be said, however, that in view of the fact that the statute was enacted by the second session of the Nevada Legislature and was approved February 14, 1866, St.1866, c. 20, that the grazing of sheep and cattle had not then arrived at a situation requiring any specific legislation. The title of the statute: "An Act to Secure Liens to Ranchmen and other persons", is not suggestive of a stock ranging situation. In the case of Estey v. Cook, supra, the Court said: "The lien, under the statute, is lost when the possession is parted with (Cardinal v. Edwards, 5 Nev. 36), and it would seem, has no existence apart from possession in the lien claimant."

Corpus Juris Secundum gives the definition of agistment and nature of the contract as follows:

"Agistment is the pasturing of cattle or similar animals as a bailee in consideration of an agreed price to be paid by the owner.

* * *

"Delivery of animals pursuant to a contract of agistment constitutes a bailment of the animals." 3 C.J.S., Animals, §§ 15 and 16, page 1107.

With respect to an agistor's lien appear the statements:

"(1)   In General

"The usual agistor's lien is statutory, and legislative provisions control its character and extent. * * *."

* * *

"(2)   Essentials of Lien

"Broadly speaking, the essentials of a statutory agistor's lien are a valid contract for the care of the animals for compensation, and control and possession of the animals by the agistor."

* * *

"(3)   Persons Entitled to Lien

"Broadly speaking, anyone having the care, control, and possession of animals belonging to another and receiving compensation therefor may become entitled to an agistor's lien, although such lien will be denied to persons failing to meet one of the above requirements." 3 C.J.S., Animals, § 21, pages 1118, 1119.

The contention is made that, as owner of the range, plaintiff exercised sufficient control over the sheep so as to have possession within the meaning of the statute entitling plaintiff to a lien of agistment. This contention is based on the following statement: "Under the rules and regulations of the Department of the Interior which are a part of every grazing lease, forest rangers in the employ of the Interior Department have the power and authority to control the movements of sheep or grazing cattle on and off the reserva-

tion and to direct its movements within the reservation, although the actual herding is conducted by men in the employ of the lessees. Nevertheless, the Department of the Interior exercises a sufficient control over the grazing animals to establish a constructive possession, thus giving the plaintiff possession within contemplation of the statute, in order to establish a lien of agistment."

The attention of the Court has not been called to any specific rules and regulations of the Department of the Interior which would be applicable to a grazing permit similar to that herein in question. What is known as the Taylor Grazing Act applicable to grazing lands upon the public domain generally did not become a law until June 28, 1934, more than a year following the termination of grazing under the permit and the sale of the sheep herein involved. The statute exempts Indian Reservations from its provisions. National forests are, also, exempted subject to an authorization of the President to transfer certain areas principally valuable for grazing to the Interior Department administration. 43 U.S.C.A. §§ 315, 315*l*; 16 U.S.C.A. § 471.

The grazing permit here in question specifies the number of sheep which may be grazed thereunder at 25,000. The permit provides that the permittee shall make affidavits showing the number of sheep grazed at the close of June and December of each year. The permittee, also, agrees to "notify the officer in charge of the reservation a sufficient length of time in advance to permit him to have a representative present when stock are counted on or off the reservation under this permit." Other provisions have reference to round-ups for the purpose of counting the stock. An extra charge or penalty is imposed for grazing an excess number over that specified in the permit but no credit or rebate is allowed in case the full number is not grazed. It is provided that the permit "is not to be taken or construed as granting any leasehold interest in or to the land described herein, but is a mere naked permit, terminable and revokable in the discretion of the Secretary of the Interior." In addition to the regular form of the permit, two additional provisions are appended one of which reads: "Permittee to be allowed free crossing of his stock and access to loading stations, when necessary, also, feeding grounds for feeding hay purchased of Indians during the lambing seasons, all under proper restrictions."

There is nothing in the form of the permit from which the conclusion would follow that the permittor had such possession and control of the sheep while grazing that would constitute a bailment. A reference to any map showing the boundaries of the Pyramid Lake Indian Reservation, will disclose that the area of land covered by the permit is in excess of one hundred square miles. This is an additional fact supporting the conclusion that plaintiff did not have an agistor's lien on the sheep in question.

The fact that the sheep were driven from the Reservation without notice as provided for in the permit does not affect the legal status of the sheep so far as a lien is concerned. It is conceded that about nine thousand head of sheep were so removed from the Reservation and subsequently sold by the Receiver. The contention is made in the briefs of plaintiff that defendant is not entitled to recover for the reason that the note secured by mortgage is barred by the statute of limitations. The question of a bar by the statute of limitations was not raised by demurrer or reply to defendant's answer. No question appears ever to have been made by the makers of the note and mortgage that the same was barred by the statute of limitations. Assuming without so deciding that the question might be raised, it might then be shown, if such be the fact, that payments made on the note had materially extended the time of limitation. It is a matter of common knowledge that the year 1929, was an exceptionally prosperous one for those engaged in the live stock industry. In the absence of a showing to the contrary it could hardly be assumed that a payment was not made about that time on a stockman's bank indebtedness. The rule is well founded in reason, that a question of limitation should be pleaded. In re Solomons, D.C., 2 F.Supp. 572; Reed v. Richardson, 94 Mont. 34, 20 P.2d 1054; Franklin v. Mortgage Guaranty & Security Co., 9 Cir., 57 F.2d 834; 37 C.J. 1213, § 718.

Defendant is entitled to a decree as prayed for that plaintiff take nothing by this suit. It is so ordered.