to search; that she said there was no more whiskey there and to "go ahead and look," and as a result of their search they found 6 half pints of whiskey and 12 cans of beer.

Investigator Pierce testified that he witnessed the sale and then followed Bowman into the house; that he found the appellant lying in bed in his room; that the appellant said there was no more whiskey in the house but that they could go ahead and look; and that they found the whiskey near his bed and the beer in the ice box.

Appellant did not testify or offer any evidence in his behalf.

Appellant presents only three bills of exception by which he attacks the legality of the search because the officers did not have a search warrant. He challenges the efficacy of the consent given because the officers were already in the house when the consent to search was secured.

Attention is directed to the fact that Officer Bowman was an invitee upon the premises because he had just consummated a purchase from the appellant's wife. Be this as it may, it is apparent from the record that the consent was secured before any contraband was found, and there is an entire absence of any showing that the officers in any way intimidated either the appellant or his wife into giving their consent to the search.

■ This Court has held that a wife may consent to the search of her husband's home. Ellis v. State, 130 Tex.Cr. R. 220, 93 S.W.2d 438, and Wheeless v. State, 142 Tex.Cr.R. 68, 150 S.W.2d 806. We have also held that the fact that the person who gave the consent to search knew that the one making the search was an officer did not render the consent involuntary. Compton v. State, 148 Tex.Cr. R. 204, 186 S.W.2d 74.

■ We find the fruits of the search admissible.

■ Appellant further complains of the refusal of the trial court to submit his re-

quested charge on circumstantial evidence. This Court has recently, in Crimaldi v. State, 259 S.W.2d 203, and Hogan v. State, 264 S.W.2d 113, held that where the accused is shown to have more intoxicants than provided for by the prima facie evidence statute a charge on circumstantial evidence is not required. In Lightfoot v. State, Tex.Cr.App., 256 S.W.2d 845, as in the case at bar, the accused had less beer and more whiskey than provided for by the prima facie evidence statute, and we held the presumption as to the whiskey supported the conviction for the possession of beer and whiskey for the purpose of sale.

Finding no reversible error, the judgment of the trial court is affirmed.

Jess RAINEY, Appellant,

v.

Walker WILLIAMS, Appellee.

No. 10276.

Court of Civil Appeals of Texas.

Austin.

Dec. 1, 1954.

Rehearing Denied Jan. 5, 1955.

Leo Darley, Uvalde, for appellant.

Arnold W. Franklin, Frank W. Steinle, Jourdanton, for appellee.

HUGHES, Justice.

Jess Rainey appeals from a judgment overruling his plea of privilege to be sued in Kinney County, the county of his residence.

Appellee Walker Williams sued appellant upon an alleged agreement, shown to be oral, under which appellant agreed to pay appellee $100 per month for keeping and training a horse belonging to appellant, $522 being the amount allegedly due. Appellee's petition, incorporated in his controverting affidavit, contains this allegation:

"Plaintiff would further show the court that in accordance with Article No. 5502 of the Revised Civil Statutes of Texas, plaintiff had and has a special lien on said horse so placed in his care for feed, care and attention, but the defendant, on or about the 6th day of September, 1953, in the County of Atascosa and State of Texas, did then and there fraudulently take a horse, from the possession of the said plaintiff, without the consent of plaintiff with the intent then and there to deprive plaintiff of his lien on said animal and the value thereof, and with the intent then and there to appropriate it to the use and benefit of him, the said defendant."

The prayer of the petition was that appellee recover $522 with interest from September 6, 1953, costs of suit and general relief.

Appellee contends that venue lies in the county of suit under the trespass provisions of subdivisions 9 and 9a of Art. 1995, Vernon's Ann.Civ.St., because appellant converted the horse upon which he had a lien.

It is our opinion that under the undisputed evidence appellee consented to the taking of the horse by appellant, hence there was no conversion of the horse and any lien which appellee may have had on the horse was waived since possession is essential to an agister's lien. Hindes v. Lock, Tex.Com.App., 259 S.W. 156; 28 Tex. Jur. p. 24.

Appellee testified:

"Q. Is the horse on your place now? A. No, sir.

"Q. When was the horse taken? A. It was taken the 6th day of September.[1]

"Q. Who took the horse? A. I wasn't at home the day he taken the horse. I didn't see him take the horse myself.

"Q. Did you give anybody permission to take the horse? A. I told Mr. Rainey, I talked to him over the phone and I told him the mare got crippled up there and that he should come get the mare and quit running her because if he kept on running her he was going to ruin her, and he told me he would be there in a couple of days, and he never come for three weeks and when they did come and get the horse I was gone, came one Sunday and I was gone.

\*　　\*　　\*　　\*　　\*　　\*

"Q. And at that time you told him to come and get the horse, you didn't want her any more? A. No, I didn't tell him I didn't want the horse any more. I told him the mare had got crippled and he ought to quit running her because if he kept on running her he was going to ruin her.

"Q. Did you suggest to him to come get the horse? A. I told him to come get the horse.

\*　　\*　　\*　　\*　　\*　　\*

"A. I didn't ever refuse to let him have the mare. I didn't see the man."

We have not overlooked the following testimony of appellee:

"Q. Was it agreed between you and Mr. Rainey that he was to pay for the horse before he got the horse? A. Yes, sir. I don't work on credit all the time.

"Q. At the time that he took the horse, the horse was taken, it was taken without your consent? A. Yes, sir.

"Q. And against your wishes? A. Yes, sir. \* \* \*

"Q. Walker, if you had been present at the time that the horse was taken would you have allowed them to take it without paying for it? A. Well, everybody is supposed to pay when they get their horse. That is the way they do. That is the only man that ever taken a horse away that didn't pay me. I would have wanted my money all right."

A young man who lived on appellee's farm testified that he was present when appellant came for the horse on September 6th at about 12:00 o'clock noon and that he did not tell appellant not to take the horse.

■ Appellee, by his own admission, gave appellant unqualified authority to come and get the horse which authority was never retracted or limited. Appellee's testimony that the horse was taken without his consent and against his wishes are but conclusions unsupported by any tangible facts.

Even if, as appellee testified, it was agreed that appellant would pay before taking the horse this is merely evidence of a broken agreement to pay and adds nothing to the obligation of the original contract nor does it imply, considering all the testimony of appellee, that he would not surrender the crippled horse without payment.

The judgment of the trial court is reversed and this cause is remanded with instructions to transfer this suit to the District Court of Kinney County.

Reversed and remanded with instructions.

[1]. It is not shown where the horse was taken nor where it was at the time of suit.