A. C. AHLSWEDE, Appellant, v. ED SCHONEVELD, WANDA SCHONEVELD, and TONY SCHONEVELD, dba SCHONEVELD MILL, Respondents.

No. 6385

September 17, 1971                              488 P.2d 908

Herbert F. Ahlswede, of Reno, for Appellant.

Diehl, Recanzone & Evans, of Fallon, for Respondents.

450

## OPINION

By the Court, BATJER, J.:

On April 2, 1969, the respondents commenced a claim and delivery action, in district court, to regain possession of 62 head of cattle which they allege to have purchased from William D. Colburn, and which were being wrongfully held by the appellant.

The matter was tried before the district court without a jury. The trial court found that the appellant wrongfully took possession of the 62 head of cattle belonging to the respondents under an alleged agister's lien when no such lien existed; ordered the undertaking[1] which had been filed on the claim and delivery of the cattle exonerated, and granted judgment in favor of the respondents in the sum of $3,812.56, plus costs.

During the year 1967, the appellant was hired as the manager of the Colburn Ranch owned by William D. Colburn, and located near Yerington, Nevada. On January 17, 1969, Colburn sold certain cattle to S & S Cattle Company, a family

[1]On May 23, 1969, the respondents filed an undertaking on claim and delivery of personal property in the amount of $40,000, and the cattle were released to them.

partnership formed by the respondents. Those cattle eventually became the subject of this litigation. Three days after he sold the cattle, Colburn leased the ranch to Tony Schoneveld, one of the respondents. The cattle purchased by the respondents remained on the leased premises along with between 250 to 300 head of cattle still owned by Colburn.

The appellant's employment as manager of the ranch was terminated on the 1st day of February, 1969; thereafter, on February 8, 1969, he reentered the Colburn Ranch premises and removed 62 head of cattle, claiming an agister's lien.[2] In taking the cattle, the appellant asserted that Colburn owed him money for pasturage provided on the appellant's ranch and feed provided from the appellant's ranch and taken to the Colburn Ranch where it was fed to the cattle.

The appellant asserted at trial and again upon this appeal that he held a valid agister's lien, and asks this court to reverse the adverse judgment of the lower court.

At common law, agisters had no lien for the care and feeding of animals bailed to them. This was because they did not impart any new or added value to them. Furthermore they were not within the scope of the rule which confers a lien upon an innkeeper because agisters are not required to receive all animals that may be brought to them for keeping, but they could refuse service and impose their own terms. NRS 108.540[3] abrogates the common law rule denying a lien to agisters. The trial court correctly found that the appellant had no agister's lien when he retook the respondents' cattle.

Usually a person does not acquire an agister's lien by furnishing feed which is fed to animals elsewhere than on the furnisher's premises because he does not have the requisite possession to establish his lien. Cf. Roswell Trading Co. v. Long, 192 P. 482 (N.M. 1920).

Likewise, a servant for hire is not ordinarily entitled to the benefit of an agister's lien. McKee Live Stock Co. v. Menzel,

[2]An agister is a particular kind of bailment under which a person takes in animals for care and pasturing, for a consideration. Bramlette v. Titus, 70 Nev. 305, 267 P.2d 620 (1954).

[3]NRS 108.540(2) provides in pertinent part: "Any person furnishing feed, pasture, or otherwise boarding any animal or animals, at the request or with the consent of the owner or his representative, shall have a lien upon such animal or animals, and may retain possession thereof until the sum due for such feed, pasture or board has been paid."

201 P. 52 (Colo. 1921); National Bank of Republic v. Drulas, 214 P. 24 (Utah 1923). At the time the animals were actually pastured by the appellant on his ranch, he acquired an agister's lien for the pasturage and other feed furnished to them there. He was then acting in the capacity of an agister and not as the manager of the Colburn Ranch.

Although the respondents concede that the appellant had an agister's lien on Colburn's cattle prior to his termination as ranch manager but that his possession was lost and his lien terminated when he was fired,[4] this is an invalid legal conclusion. Parties may stipulate to facts but they may not stipulate to the law. Such stipulations as to the law will be disregarded. April Fool Gold Mining and Milling Co. v. Dula, 24 Nev. 289, 52 P. 684 (1898); Beko v. Kelly, 78 Nev. 489, 376 P.2d 429 (1962). When the appellant took or allowed the cattle to be taken from his premises back to the Colburn Ranch, he lost his agister's lien. He was no longer a bailee, and his control of the cattle thereafter was in the capacity of an employee of Colburn, and Colburn was in possession.

Possession is essential to the creation and preservation of liens under the common law. Reed v. Ash, 3 Nev. 116 (1867). The rule is no different with regard to statutory liens. The right begins and ends with possession. An agister's lien attaches only while the animals remain in possession of the lienholder. McKee Live Stock Co. v. Menzel, supra; Hill v. Rhule, 204 P. 894 (Colo. 1922); First Nat. Bank v. Silva, 254 P. 262 (Cal. 1927); Loader v. Bank of Idana, 216 P. 264 (Kan. 1923); Hoy v. Griffin, 22 P.2d 449 (Kan. 1933); Rainey v. Williams, 273 S.W.2d 890 (Tex.Cir.App. 1954); Jones on Liens, § 21, at 17 (3rd ed. 1914).

There have been two cases decided by this court construing

---

[4]The following language is found in the respondents' answering brief: "The Respondents did not contend at trial, nor do they now contend, that Appellant was never entitled to an agister's lien on MR. COL-BURN'S animals because of his position as a manager or foreman of the COLBURN RANCH. That is the question decided by the Oklahoma Supreme Court in *National Bank of Commerce vs. McDaniel,* and Respondents have no quarrel with the Appellant on this score. The contention of the Respondents, at trial and on appeal, is that MR. AHLSWEDE had some custody or possession of the animals during the time he was employed as manager of the COLBURN RANCH, but that this custody or possession was lost by him when he was removed from his position as manager or foreman."

the agister's lien statutes and both were decided before the enactment of NRS 108.540. The opinions in these two cases, Cardinal v. Edwards, 5 Nev. 36 (1869) and Estey v. Cooke, 12 Nev. 276 (1877), were rendered when Statutes of Nevada 1866, Chapter XX, page 65[5] was in effect. The modifications found in NRS 108.540 do not in any way change the rule that possession is essential to the creation and preservation of liens. This court in Cardinal v. Edwards, supra, at 42, construed the then existing statute as follows: "A voluntary relinquishment or surrender of the possession always destroys the lien." That holding was reaffirmed in Estey v. Cooke, supra. Cf. United States v. Henderson, 29 F.Supp. 1006 (D. Nev. 1939).

In Nevada-Douglas Co. v. Berryhill, 58 Nev. 261, 272–273, 75 P.2d 992, 996 (1938), this court, distinguishing between a lien and a pledge, quoted with approval from Winnemucca State Bank & Trust Co. v. Corbeil, 42 Nev. 378, 383, 178 P. 23, 24 (1918): "The contract or pledge exists in law as well as equity, and that by operation of law the pledgee takes, not a lien only, which is merely a right to retain until the debt, in respect to which the lien was created, has been satisfied, but a property—an ownership in the property pledged. In Story on Bailments (8th ed.), sec. 311, p. 265, it is said: '[B]ut in the case of a lien, nothing is supposed to be given but a right of retention or detainer, unless under special circumstances.' ". See also Ewing v. Fahey, 86 Nev. 604, 472 P.2d 347 (1970); Hughes v. Aetna Ins. Co., 261 S.W.2d 942 (Mo. 1953); 53 C.J.S., Liens, sec. 17(3).

If the appellant had continued either actual or constructive possession of the cattle after he had pastured and fed them on his premises, his agister's lien would not have been defeated by the sale of the cattle by Colburn to the respondents, but the appellant's return of the cattle or his acquiescence in their return to the Colburn Ranch terminated his lien. As was said by this court in Reed v. Ash, supra, at 19: "Nor . . . would her security have held good one hour longer than she retained possession." The appellant's control of the cattle in his capacity as

---

[5]This code section is also found in Cutting's Compiled Laws of Nevada, Annotated 1861–1900 (1900), section 3905, page 808 and Bonnifield & Healy Compiled Laws of Nevada, Statutes of 1861–1873 (1873), Volume I, Chapter XX, at page 52. The law read in part: "Any ranchman, or other person or persons, keeping corrals, livery or feed stables, or furnishing hay, grain, pasture, or otherwise boarding any horse or horses, mule or mules, ox or oxen, or other animal or animals, shall have a lien upon and retain possession of the same, or a sufficient number thereof, until all reasonable charges are paid."

ranch manager for Colburn was not the requisite possession to preserve his agistment.

Nowhere in NRS 108.540–108.570 is there any provision for retaking animals once held under an agister's lien, but where possession has been lost. Cf. NRS 108.280, where a garageman is specifically granted the right to regain possession and assert his lien even though possesion has been voluntarily relinquished. If the legislature had intended to permit animals, subject to an agister's lien, to be retaken once possession is lost, it could have enacted a section in the agister's lien law similar to NRS 108.280. See Yellow Mfg. Acceptance Corp. v. Bristol, 236 P.2d 939 (Ore. 1951); Barbre-Askew Finance v. Thompson, 100 S.E.2d 381 (N.C. 1957).

In Hoy v. Griffin, supra, 22 P.2d at 451, that court said: "If the cattle were turned back to their owner or if he assumed possession and control of them, the lien that may once have existed would . . . be waived." In Hill v. Rhule, supra, the court held: ". . . [T]here can be no agister's lien founded on wrongful possession. (Citation omitted.) Nor does wrongful possession revive any lien." Because he had lost his agister's lien, the appellant's actions were wrongful and his lien did not revive.

The appellant relies heavily upon National Bank of Commerce v. McDaniel, 174 P. 286 (Okla. 1918). A reading of the statute construed in that opinion makes no mention of possession and the Oklahoma Supreme Court, at 288, held: "The lien provided for by our statute is not designated a possessory lien, . . . nor is it, by the terms of the statutes, dependent upon possession."

The appellant has failed to cite any authority in support of his contention that the trial court erred when (1) it found that the respondents were the owners of and entitled to the possession of the cattle in question; (2) rejected the appellant's offer of proof; and (3) restricted the cross-examination of one of the respondents, Edward Schoneveld. Those specifications of error have been reviewed and found to be without merit. Riverside Casino v. J. W. Brewer Co., 80 Nev. 153, 390 P.2d 232 (1964).

The judgment of the district court is affirmed.

ZENOFF, C. J., MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.