CLINTON J. ROBERTS, Appellant, *v.* J. WAYNE
GATTSHALL and A. D. FOX, Respondents.

No. 7782

September 30, 1975 540 P.2d 1067

[Rehearing denied November 6, 1975]

*Paul J. Williams,* of Reno, for Appellant.

*William L. Hammersmith,* of Reno, for Respondent A. D.
Fox.

*Richard J. Legarza,* of Reno, for Respondent J. Wayne
Gattshall.

## OPINION

By the Court, ZENOFF, J.:

On May 17, 1967, J. Wayne Gattshall and Clinton J. Roberts executed a contract for sale of a 2½ acre lot in Sun Valley, Washoe County, Nevada. Gattshall was the seller, Roberts the buyer. The terms called for a total purchase price of $5,000.00 plus 6% interest on the unpaid balance. Roberts was to pay $250.00 down and the balance in $50.00 monthly installments. Roberts moved into possession of the property.

On June 16, 1969, at which time payments on the purchase were current, Roberts was involuntarily committed to the Nevada State Hospital pursuant to an order of the Second Judicial District Court under Chapter 433, Nevada Revised Statutes. The order read, ". . . mentally ill and incompetent to provide for his own proper care and support." Roberts remained in the hospital but was allowed convalescent leave from time to time.

In November 1969, Gattshall and Roberts orally agreed that Roberts was to take title to ½ acre of the parcel of property and Gattshall was to take title to the remaining two acres. Roberts, at trial, testified that the burden of the entire purchase was too much for him, but that he had already paid in about $1,700.00 at the time of the oral agreement so that by taking the ½ acre and giving the rest of the property back to Gattshall he would be receiving value for the payments he had made plus relieving himself of any further obligations.

In December 1969, Gattshall arranged to have the ½ acre surveyed out of the 2½ acres. In March of 1970, subsequent to reaching the oral understanding with Roberts, Gattshall entered upon the property and made substantial changes and improvements at a cost of about $4,000.00.

On April 12, 1970, Roberts and Gattshall signed a written memorandum confirming their November 1969 understanding which by itself was insufficient to comply with the Statute of Frauds.

In January 1970, prior to the execution of the written memorandum with Gattshall, Roberts entered into a sales agreement with A. D. Fox whereby Fox agreed to purchase the ½ acre from Roberts for $5,000.00. Fox, in April of 1970, took possession of the ½ acre parcel.

Gattshall's quandry came about because Roberts refused to sign the necessary transfer documents. Roberts' refusal was based upon Gattshall's insistence that the deeds contain a utility and roadway easement over the Roberts-Fox ½ acre. Gattshall claimed it was part of their agreement and without it his proposed development for the two acres would not be possible.

Gattshall then declared the first sales contract in default upon Roberts' failure to make payment from November 1969, at which time the previously mentioned oral understanding was reached. Roberts countered that he did stop paying but that because their oral agreement, later reduced to writing, superseded the first contract he no longer had to pay. Because Roberts had not yet been committed to the state hospital for reason of incompetency at the time of their original sales agreement, Gattshall contends that the agreement was still in good standing and that since Roberts could not legally enter into the oral contract of November 1969 Gattshall had the right to foreclose on the first sales agreement. The trial court ruled that part performance of the oral agreement removed it from the Statute of Frauds and was therefore a binding agreement, but did not find in Gattshall's favor that the easement was a

part of the understanding between the parties. The trial court ordered Roberts to convey the 2½ acres to Gattshall, Gattshall to convey the ½ acre to Roberts and Roberts to convey, in turn, the ½ acre to Fox. After the action was commenced a guardian ad litem was appointed for Roberts.

1. During the trial, counsel for both Gattshall and Roberts orally stated that they were in accord that when Roberts was committed to the state hospital his commitment there constituted the only necessary adjudication of his incompetency. The trial court correctly refused to accept the stipulation. Parties may stipulate to the facts but they may not stipulate to the law. Ahlswede v. Schoneveld, 87 Nev. 449, 488 P.2d 908 (1971).

Nevada Revised Statutes §§ 433.685[1] through 433.697 provide for the initial hospitalization of a person who is too incompetent to care for himself, however, that is not the adjudication called for by NRS 433.725.[2] NRS 433.725 insures

---

[1]NRS 433.685 reads as follows:

Petition for judicial hospitalization: Who may file; accompanying documents. Proceedings for the judicial hospitalization of any person in the State of Nevada may be commenced by the filing of a petition with the clerk of the district court of any county where the person who is to be hospitalized resides by his spouse, parent, adult children or legal guardian, by any physician, duly accredited officer or agent of the department of human resources, or by any officer authorized to make arrests in the State of Nevada. Such petitions shall be accompanied:

1. By a certificate of a physician stating that he has examined the person and is of the opinion that such person is mentally ill, and because of such illness is likely to injure himself or others if allowed to remain at liberty; or

2. By a sworn written statement by the petitioner that:

(a) The petitioner has good reason to believe that such person is mentally ill and, because of such illness, is likely to injure himself or others if allowed to remain at liberty; and

(b) That such person has refused to submit to examination by a physician.

[2]NRS 433.725 reads as follows:

Exercise of certain rights by patients. No patient hospitalized pursuant to this chapter shall, by reason of such hospitalization, be denied the right to dispose of property, marry, execute instruments, make purchases, enter into contractual relationships, vote and hold a driver's license, unless such patient has been adjudicated incompetent by a court of competent jurisdiction and has not been restored to legal capacity. If the chief of service of the public or private hospital in which any such patient is hospitalized is of the opinion that such patient is unable to exercise any of the aforementioned rights, the chief of service shall

the civil liberties of a person hospitalized under Chapter 433. Under this specific section a hospitalized person does not lose his right to dispose of property, marry, execute instruments, make purchases, enter into contractual relationships, vote and hold a driver's license unless he is separately and singly adjudicated incompetent from doing any or each of the foregoing acts. Cameron v. Mullen, 387 F.2d 193, 202 n. 29 (D.C. Cir. 1967).[3]

So long as the oral understanding of November 1969 is recognized as enforceable, Gattshall cannot contend that it is invalid by reason of Roberts' legal incompetency. To be legally incompetent Roberts would have had to be so declared by a separate adjudication.

Having found that there was sufficient evidence to support the oral agreement as a binding contract further discussion of other issues becomes unnecessary. The trial court weighted the testimony concerning the easement in favor of Roberts. The record on appeal supports the findings of the trial court. Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973).
Affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.

immediately notify the patient and the patient's attorney, legal guardian, spouse, parents or other nearest known adult relative, and the district court of that fact.

[3]See generally, Allen, Ferster and Rubin, *Readings in Law and Psychiatry* (Rev. Ed. 1975), Johns Hopkins University Press.