# MANHATTAN FIRE & MARINE INS. CO. *v.*
# GRAND CENTRAL GARAGE

No. 2940

April 5, 1932. 9 P.(2d)682.

*Ernest S. Brown,* for Appellant:

*Le Roy F. Pike,* for Respondent:

## OPINION

By the Court, DUCKER, J.:

This action was instituted in the lower court by appellant to recover damages from the respondent, resulting from the negligence of an employee of the latter in driving an automobile belonging to a patron of the respondent. The automobile was wrecked by colliding with a power pole and fire plug in the city of Reno. Appellant was the insurer of the automobile, and paid damages to the owner in the amount of $656.30. The appellant was subrogated to the rights of the owner.

The action was tried by the court without a jury. The appeal is from the judgment rendered and from an order denying a motion for a new trial. The facts in the main are undisputed.

At the time of the accident respondent was a partnership engaged in the business of conducting a public garage in the city of Reno, and maintained a day and night service. On December 5, 1928, John A. Capper placed his Packard 5-passenger sedan automobile with the respondent for storage and the service usually connected therewith, for the payment of $10 per month.

Under the conditions of the contract, the respondent, Grand Central Garage, was to store the car, service it, and deliver it to the home of Mrs. Marion Dowd, Capper's daughter, or her mother, Mrs. Capper, when ordered by either of them to do so, and, if either brought the car to the garage, she was to be taken home by the garageman and the car returned to the garage. This was the entire contract, and was the usual service given other patrons of the respondent.

. The automobile was kept in the garage under the foregoing contract to and including the morning of March 18, 1929. One William Tener, known to Mrs. Dowd and her mother as Fred, was an employee of the respondent during all of the time mentioned. He was the nightman at the garage. His hours of work were from 6 p. m. to 6 a. m., and the nature of his services was to attend to the business of respondent as heretofore stated. At about 9 o'clock on the evening of March 17 Mrs. Capper called up the garage by telephone. The call was answered by Sam Frank, one of the owners of the garage, and Mrs. Capper told him she would like to speak to Fred. Frank called Tener to the telephone. As a witness for plaintiff, Mrs. Capper testified that she told Fred over the telephone at this time that she wanted the car delivered at 8 o'clock the next morning at the station for the train coming from San Francisco, for Mrs. Dowd, her daughter, and that Tener said, "All right." William Tener, as a witness for the plaintiff, testified that when he went to the telephone Mrs. Capper said, "That being that I done all the extra work for Mrs. Dowd, would I go down to the early morning train and meet Mrs. Dowd when she came in." On being asked by counsel for plaintiff if she said the 8 o'clock train in the morning, he answered, "Absolutely not; didn't specify, said the early morning train." This constitutes the only conflict in the entire evidence.

Some time in the early morning of March 18 Tener took the Capper automobile out of the garage and wrecked it.

The answer denied the allegations of the complaint, and alleged that said William Tener "while driving the said automobile claimed to have been owned by said John A. Capper, was acting in the employ of said John A. Capper or his agent, and was not under the influence or control of the defendant or in the employ of the said defendant at said time." The trial court found that at the time of the accident said William Tener was acting as the agent of the said John A. Capper and Mrs. John A. Capper, his wife, and that the said William Tener was not, at the time of the accident in which said automobile was damaged, in the employ of the defendant, Grand Central Garage, and was acting outside of the scope of his duties as an employee of the Grand Central Garage.

The errors assigned amount to a claim by appellant that the evidence is insufficient to support the finding upon which the judgment is based. In this regard appellant contends that its action is for a breach of the contract to store the Capper automobile, and that the defense that respondent's servant was not acting within the scope of his employment is not available, and that, after appellant had proved a prima facie case by showing the contract, and the failure of respondent to deliver the automobile on demand, the burden was on the respondent to show that its loss or damage was not due to its negligence. This contention presents a correct statement of the law applicable to an action for breach of a contract of bailment for hire. The rule is stated in 6 C. J. page 1158: "The rule in the more modern decisions is that the proof of loss or injury establishes a sufficient prima facie case against the bailee to put him upon his defense. Where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part."

The reason for the rule is given in Davis & Son v.

Hurt, 114 Ala. 146, 21 So. 468, 469, as follows: "The rule is founded in necessity, and upon the presumption that a party who, from his situation, has peculiar, if not exclusive, knowledge of facts, if they exist, is best able to prove them. If the bailee to whose possession, control, and care goods are instrusted will not account for the failure or refusal to deliver them on demand to the bailor, the presumption is not violent that he has been wanting in diligence, or that he may have wrongfully converted, or may wrongfully detain them. Or, if there be injury to or loss of them during the bailment, it is but just that he be required to show the circumstances, acquitting himself of the want of diligence it was his duty to bestow."

This court is among the courts adhering to the modern rule stated. In Donlan v. Clark, 23 Nev. 203, 45 P. 1, this court held: "When a bailee, either for hire or gratuitous, is intrusted with the care and custody of goods, it is his duty to return them at the end of the bailment, or account for their loss, and show that it happened without legal negligence upon his part. If he fails to do either, the presumption is that they have been converted by him, or lost through his negligence, and he is responsible for them."

It was further held that the burden of proving that the goods had not been lost or damaged through any fault of his (bailee) was upon him, and he must establish such defense to the satisfaction of the court.

■■ The respondent had this burden in the instant case. Assuming, as we have, that this is an action for breach of a contract of bailment, respondent could not support this burden by proving that Tener was acting outside the scope of his employment when the automobile was wrecked. That is no defense in an action of this kind. A different rule of liability exists in a case of this kind from that which prevails when the liability sounds entirely in tort. The doctrine is thus stated in Wood's Law of Master and Servant, sec. 321: "When by contract, or by statute, the master is bound to do certain things, if he intrusts the performance of that

duty to another, he becomes absolutely responsible for the manner in which the duty is performed precisely the same as though he himself had performed it, and that without any reference to the question whether the servant was authorized to do the particular act. * * * Where the master by contract or operation of law is bound to do certain acts, he cannot excuse himself from liability upon the ground that he has committed that duty to another, and that he never authorized such person to do the particular act. Being bound to do the act, if he does it by another, he is treated as having done it by himself, and the fact that his agent or servant acted contrary to his instructions, without his consent, fraudulently even, will not excuse him."

■ As the respondent's agent, it was Tener's duty, growing out of the contract of bailment, to protect appellant's automobile, but, if he disregarded that duty and violated the contract he was bound to perform, his principal was liable. The fact that he was acting outside of the scope of his employment at the time would be immaterial. Corbett v. Smeraldo, 91 N. J. Law, 29 102 A. 889; Evans v. Williams, 232 Ill. App. 439.

But respondent's defense goes further than that Tener was acting beyond the authority delegated to him. It is alleged that he was acting as the agent of Capper or his family at the time of the accident. The trial court found this as a fact, as we have seen, and respondent contends that the evidence in this regard is sufficient to satisfy the rule of law which places the burden on the bailee in such case to prove the damage was not due to its negligence.

We think the contention is well founded. As pointed out by the trial court in its written decision found in the record, Frank paid Tener for certain services in the garage, but the testimony shows that Mrs. Dowd paid him for special services to her outside of the contract between her and the Grand Central Garage, such as driving her to market, taking the maid, and so forth. These special services were frequently rendered to her during his hours of employment in the garage. Frank

testified that taking a car to a train or shopping or anywhere other than to the home of the person and returning it to the garage by one of his employees was outside of the contract of storage with patrons. On this particular occasion and during his hours of employment the evidence shows without conflict that a special service was requested of Tener by Mrs. Capper; namely, for him to take the automobile to the train to meet her daughter, Mrs. Dowd, who was returning from San Francisco to Reno. But there is a conflict in the testimony of appellant's witnesses, as we have seen, as to the time Tener was to take the automobile for this special service. Mrs. Capper testified that she told him to deliver the automobile at the station at 8 o'clock the next morning. Tener testified that she did not specify any hour, but told him to take it to an early morning train; that he inquired from different persons when early morning trains came into Reno; that he was informed that there was one about 3 or 4 o'clock in the morning and one about 7 or 8 in the morning, and concluded that he would have to meet them both in order not to miss Mrs. Dowd; that he never got any definite information until he reached the railroad station and there was informed that certain trains came in around 3 or 4 o'clock in the morning, and that the next one was due in about forty-five minutes; that he was a little early for that train and went for a ride in the automobile. The following examination on this point was conducted by the court:

"The Court: Let me ask you a question; you say you were taking a ride, what time did you leave the garage when you started on this ride? A. I don't know, your Honor, it has been so long ago.

"Q. Was it your intention of going to meet this train to get this lady, Mrs. Dowd? A. Yes, sir.

"Q. You intended to use the car on that mission, is it true? A. Yes, sir.

"Q. And you left the garage a little while ahead of that, I assume from what you state? A. No, sir. I had a misunderstanding when the train was due, and I went

to the station to see if the train was in and inquired from the man at the station there when the next train would be in. He told me it would be a little later. Then I went back to the Grand Café to pick up the other boy that was eating; the other boys asked us if we would take them for a ride and we went for a ride and smashed the car up.

"Q. As I understand it, you were killing time with the car until the train should get in, is that it? A. Yes, sir.

"The Court: That is all."

 Tener was a witness for plaintiff, and we think his version of the affair and of Mrs. Capper's appointment with him to meet the train furnishes a sufficient basis in the evidence for the finding of the court that he was at the time rendering a special service for her. Tener and Frank both testified that meeting trains was not a part of the regular service rendered by employees of the garage. There is no conflict in the evidence as to this. The only conflict is as to the time Tener was directed by Mrs. Capper to take the car out. We cannot disturb a finding supported by substantial evidence. The evidence which the trial court accepted and had a right to accept established that, while Tener at the time of the accident was acting outside the scope of his employment by respondent, he was at the same time acting as the servant of Mrs. Capper pro hac vice.

The judgment and order appealed from are affirmed.