38 So.2d 334

### GULF, MOBILE & OHIO R. CO. v. WILLIAMS.

#### 5 Div. 460.

Supreme Court of Alabama.

Jan. 20, 1949.

Gerald & Gerald, of Clanton, and Steiner, Crum & Weil, of Montgomery, for appellant.

518

Omar L. Reynolds and Reynolds & Reynolds, all of Clanton, for appellee.

**BROWN, Justice.**

This is an action on the case by Libby Williams, appellee, who sues as administratrix of the estate of Chester Otis Williams, deceased, against Gulf, Mobile & Ohio Railroad Company, to recover damages for the wrongful death of her intestate. The action is brought under § 123, Code of 1940, Title 7, known as the homicide act, which is designed and intended to punish negligent, wanton or intentional acts causing the death of a person.—Breed v. Atlanta, B. & C. R. Co., 241 Ala. 640, 4 So.2d 315. The right of action which the homicide act creates is a "new and distinct cause of action, unknown at common law. The cause of action comes into being only upon death from wrongful act."—Parker v. Fies & Sons, 243 Ala. 348, 350, 10 So.2d 13, 15. The damages recoverable are punitive in their nature to punish the person or corporation for negligently or wrongfully causing the death.—Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann.Cas. 1916E, 565. The damages recoverable in such action are in no sense compensatory.

The major facts in this case are without dispute. The evidence shows that plaintiff's intestate, while drunk, and a trespasser on the yards of the defendant railroad company, crawled under one of a cut of cars then being made up into a train by the switching crew in the yards. The said car under which said intestate crawled, from some cause not clear, moved and severed intestate's head from his body, just as his head reached and protruded over the track on the opposite side from which he started over the tracks. The only eye witness to the incident was the companion of said intestate. He testified.

"Well, when we started to leave the station and come on over across the track and got there—mixed up you know in all the railroad tracks—and he said, well I believe I'll go under and get over on the trail out of these railroad tracks, and whenever he started under there, or got under, well the engine either hit the cars that was there with another cut of cars, or the engine—something hit it back there and moved the train of cars, or—the train that was standing rather—moved the cars that he was going under—that he was going under. * * *

"Well, I was down below him, he got down and went under and I started on down below him. Just about the time that I was fixing to go under, the train got—the train engine hit these cars, so I didn't attempt to go under there then. * * * Well whenever he got under the—whenever the engine hit the cars, well—some

part of the car that he went under knocked him down under there and his head hit across the rail—him being paralyzed in one hand, he didn't stand much of a chance—. Well, whenever the train quit rolling, why I felt up under there and found him laying stretched with the track, looking down the track, and I had taken him out from under the train and laid him down between the railroad tracks, the one the train was on and the one next to it. And then I went back to get somebodys help * * *. Well, his head was taken off right through his mouth, round that way, and even with his shoulders,—his head was on one side of the track, on the outside of the track from me. He way just laying looking down the track from the train. * * *."

The witness on being asked, "Did you say anything to Williams about going under the car?" answered, "I didn't say anything, because he told me, he said, I am going under the train and get over there out of the tracks on the trail, and so, no sooner than he said that then he got down and went under."

The place in the yards where this death occurred was 240 yards from the station, where intestate and his companion had gone, according to Moore's testimony, a short time before to catch a train which had gone when they reached the depot and they were returning across the yards to go the highway and catch a bus.

The accident occurred around seven o'clock on October 26, 1942, and the evidence shows that it was dark at this time. The evidence shows the crew of five men with a Diesel Engine were making up a freight train in the yards switching cars. Each and all of the train crew, including five men, testified as witnesses in the case and denied that they had any knowledge of these men being in the yards. And testified positively that at no time did they discover or have any information that plaintiff's intestate was in a place of peril. That they had no knowledge of the occurrence until the police had been called and appeared to investigate the matter.

The plaintiff introduced and examined two witnesses, D. G. Huett and C. C. Rosenberry, who had been across the yards to the Marshall Lumber Company, and in returning from the lumber company passed back through the yards and these witnesses testified that on their return across the yards going to the highway to catch a bus they saw these young men, who were drunk; that they passed within ten or twelve feet of them and after walking passed them from 25 to 50 steps when they met a man with a red lantern, who was going in the direction of where these young men were. Huett testified at the morning session of the court that as they passed this man with the lantern, they merely spoke to him; that they were in a hurry to catch the bus and went on. He was strenuously examined about what occurred when he met the man with the red lantern and he stuck to his story that they said nothing except spoke to him. He was also cross examined along the same line. At the afternoon session of the court Rosenberry was examined and in the main testified to the same facts as stated by Huett except that he testified that he said nothing to the man but that Huett stated to this man with the red lantern that there were some boys down the track that were drunk and were liable to get hurt. They both testified that as they passed these young men one was down on his all fours fixing to crawl under the train and the other was climbing up on the tank car.

After Rosenberry was examined and cross examined, Huett was again put on the stand and his testimony as given on this examination corroborated the statement of Rosenberry that he told the man with the red lantern about these young men being down there and they were liable to be hurt. They testified that the man with the red lantern stated: "You get out of the yards and take care of yourself and let them do likewise." Rosenberry also testified that he saw this man wave the lantern and they heard a steam locomotive moving down in the south end of the yard. Huett testified that the red lantern was not lighted. Rosenberry testified that it was lighted.

The foreman of the switching crew, Fletcher, testified that red lanterns are not used in the switching yards during switching operations; that only white lights were used, electric lanterns, and that the switch-

ing foreman or conductor of the crew testified the only other person on the yard was a car inspector who had nothing to do with the switching operations.

The defendant for answer to the complaint embracing counts 3, 4, A and B pleaded the general issue in short by consent with leave to give in evidence any matter that would constitute defense to the action if well pleaded. On the issues formed, the court submitted the case to the jury on Counts A and B, stating in the oral charge:

"So the administrator of the deceased brings this case in Court claiming damages under Count 'A' and Count 'B'. Those counts are the only ones that are before you as the Court understands, and those counts are the only ones upon which you will consider the case."

The jury returned a verdict for the plaintiff, assessing the damages at $2500.00. At the conclusion of the oral charge and before the jury retired, the defendant requested the general affirmative charge as to the entire case and as to each of Counts A and B, which were in writing and in proper form. The court refused these charges. After the verdict was returned, motion for new trial was made on sundry grounds and was overruled and the defendant reserved an exception to this ruling.

■ Both counts "A" and "B", on which the case was submitted to the jury are subsequent negligence counts,—negligence after the discovery of peril, imposing on the plaintiff the burden of proving that an agent or servant of the defendant, while acting within the line and scope of his employment, discovered intestate's peril in time to avert his death.—Southern R. Co. v. Stewart, 164 Ala. 171, 51 So. 324. Assuming the truth of the testimony given by the witnesses Huett and Rosenberry, that the man with the red lantern waved his lantern, the jury must draw an inference from that testimony that the man with the red lantern was an agent or servant of the defendant in some capacity, that when he waved the red lantern he was acting in the scope of his authority and line of his duty, yet to constitute his act as a wrongful or negligent act within the meaning of § 123 of Title 7, Code of 1940, supra, the jury would have to draw another inference, that this act was the proximate cause of intestate's death and that intestate's heedless and continuing act of crawling under the train did not proximately contribute thereto. This testimony at best leaves the question of knowledge of peril on the part of a responsible agent or servant of the defendant, while acting within the line and scope of duty, in the switching operation, to pure conjecture and was wholly insufficient to justify the refusal of the affirmative charge.—St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Atlantic Coast Line R. Co. v. R. L. Cooper Lumber Co., 219 Ala. 484, 122 So. 661.

■ Our judgment is that the undisputed evidence shows the intestate's death was the proximate result of his own negligence, attempting to crawl under the car in the defendant's yard while the defendant's switching crew were engaged in making up said train and that said negligence was continuous and persistent from the time he started to crawl until his head was severed from his body. The defendant was due the affirmative charge and the court erred in refusing the same.—Louisville & N. R. Co. v. Richards, Adm'r., 100 Ala. 365, 13 So. 944; American Mutual Liability Ins. Co. v. Louisville & N. R. Co. et al., 250 Ala. 354, 34 So.2d 474; Southern R. Co. v. Stewart, supra.

■■ In view of the fact that the judgment of the circuit court must be reversed and a new trial awarded, we deem it not improper, though appellant did not argue the demurrers addressed to count B, to say that said count was subject to grounds b, c, d, e, and f of the demurrer filed thereto on Feb. 11, 1948. Said count is no stronger than its weakest alternative. We do not pass on the sufficiency of counts 3 and 4.

For the error noted the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

FOSTER, LAWSON and STAKELY, JJ., concur.