HAMITER, Justice.
 

 Southern Air Transport, a commercial partnership composed of J. M. Granberry, Jr., and H. Willard Lewis, seeks in this tort .action a judgment for damages arising out ■of a ground collision at the New Orleans airport during the late afternoon of July
 
 29,
 
 1947, between its airplane and another owned by defendant, Gulf Airways, Incorporated. Each plane is known as a Douglas DC-3 and weighs unloaded approximately 17,000 pounds.
 

 Defendant’s ship had been flown to that airport from Houston, Texas, by the pilot thereof, Louis A. Labe, about a week prior to the accident and parked there on the south side of the army hangar, facing south. A few days thereafter plaintiff’s plane was flown in and parked about 200 feet farther south, but facing north. In these positions both aircraft remained unattended until defendant’s plane, during a rather severe thunder storm containing strong north winds, rolled along the concrete apron or ramp and collided with plaintiff’s motionless ship, resulting in considerable damage to the left wing and appurtenances of the latter. At that time pilot Labe, preponderate^ shown by the evidence to be an employee or agent of defendant and in charge of its plane, was at the airport but not in the immediate vicinity of the accident.
 

 There was judgment in the district court
 
 in
 
 favor of the plaintiff for $7,864.40, of which amount $6,814.40 represented physical damages and $1,050 loss of profits as a result of the collision. Defendant appealed, and in this court plaintiff has answered, praying that the award be increased so as to include additional earnings of $6,350 of which it was allegedly deprived.
 

 Appellant, in resisting appellee’s charge of actionable negligence, takes the following positions here :
 

 1. No duty existed on its part to protect appellee’s airplane from injury.
 

 2. If it owed such a duty there was no failure of performance.
 

 3. Assuming a failure of performance the accident resulted solely from an act of-God.
 

 
 *371
 
 4. If liability has been established the damages awarded are excessive.
 

 With reference to the duty owed by operators of airplanes toward others the general rule of law is given in 6 American Jurisprudence verbo Aviation, Section 23, as follows:
 

 “In the absence of statutes covering the operation and management of airplanes at the time and place of an accident, specifically applicable to the issue of negligence in the operation thereof, the rules of law applicable to torts — the ordinary rules of negligence and due care — obtain. Thus, the rule of the common law that every person shall use ordinary care not to injure another, that is, such care as the great mass of mankind would use under the same or similar circumstances or such' care as the ordinarily prudent person would use under the same or similar circumstances, applies. * *
 
 % >t
 

 In Louisiana there appears to be no statute specifically applicable to the issue of negligence in the operation of aircraft. As to the responsibility for torts generally, however, the Revised Civil Code familiarly provides: “Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * Article 2315; and, further, “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. * * * ” Article 2317.
 

 That a duty devolved upon this defendant to secure its plane during the afternoon of July 29, 1947, so that injury to others would not occur, we entertain no doubt. True, the winds attending the storm had an exceedingly high velocity, estimated at the control tower at the New Orleans Airport at from 60 to 65 mph with gusts up to 70 mph. But even with winds of that strength defendant’s plane could not have rolled, as. the evidence conclusively discloses, either if tied down or if the brakes had been set and were functioning properly; and ample time was afforded defendant’s pilot, who was then at the airport, to take these precautionary measures (both of which would require less than 20 minutes), for according to his own testimony he had 25 or 30 minutes’ warning of the storm’s approach. In this connection the record reveals that long prior to the accident (variously estimated at from 25 minutes to more than an hour) development, of dark clouds in the north was noticeable and a storm warning was issued by the official in charge of the tower.
 

 When asked what steps they would take-in safeguarding a grounded plane in anticipation of a strong blow, numerous aviation experts, offered as witnesses, agreed that they would at least make certain that the parking brakes were locked. Some said that additionally they would tie down the ship, lock the control surfaces and chock or
 
 *373
 
 block the wheels. Even defendant’s president admitted that under those circumstances a prudent person in charge of a plane would affix the exterior control locks,, set the brakes and chock the wheels. And it is appropriate to observe that the many other planes on the field did not roll or otherwise move during the storm, indicating that those in charge had realized a duty of safeguarding their respective ships and had ■discharged it.
 

 We consider now the question of whether there was a failure on the part of this defendant in the performance of that duty. Admittedly its plane was not tied down. Nor does it appear that the wheels were chocked, no pieces of wood ordinarily used for that purpose having been found at or near the parking location following the collision. Furthermore, it is indisputable that at the time of the accident either the plane’s parking brakes were not set or if set they were defective and inoperative. The evidence is conclusive to the effect that immediately thereafter the wheels could be and were rotated with comparative ease, an operation that would have been impossible if the brakes were set and functioning properly.
 

 Defendant’s pilot, Labe, testified that when he brought the plane from Houston about a week before the storm he parked it, placed chocks under the wheels and set the brakes. A day or two later he entered the cockpit with an aircraft mechanic, P. J. Somerville, for the purpose of having the latter work on the generator circuit, at which time he ran the engine up and noticed that the brakes were operating. At no other time prior to the accident did he visit the plane, although he instructed Somerville .that day, as defendant’s president requested him to do, to again check the generator. Several days following the mishap, Labe further testified, he flew the ship to Moisant Airport to have some repairs made on it, and then noticed that the brakes were operating perfectly. When asked whether any fluid had been added to the hydraulic system immediately prior to that flight he replied: “I don’t remember.”
 

 The mechanic Somerville, a witness for plaintiff, testified that he performed work on the generator of defendant’s plane on several occasions when at the airport, the last of which was during the afternoon of the storm. While so working he observed a large bulge or defect in one of the lines of the braking system and informed Labe of it. On leaving the plane as the storm was developing, but more than 30 minutes before it struck, he noticed that the wheels were not chocked; and as he passed Labe immediately 'thereafter at the Moffet Hangar he told the latter that due to the storm’s coming up to “get down and secure the plane.” The reply was that “he would see to it.” Labe denied having received this suggestion; but with Somerville then was his helper, John F. Duke, who corroborated his testimony.
 

 
 *375
 
 On the day the ship was moved to Moisant Airport, Somerville further testified, he examined the two gauges in the cockpit which disclose the plane’s braking efficiency and noticed that the pressure guage registered zero and that the -hydraulic fluid content gauge read empty, an indication of ineffective brakes. Because of this found condition he and others added to the hydraulic system almost two gallons of fluid.
 

 Defendant insists that the brakes were not faulty. It advances the theory that the plane rolled during the strong winds because Somerville, an independent contractor for whose negligence it was not responsible, or his helper, had released the brakes (while working on the generator) previously set by Labe and had failed to reset them. We find it unnecessary to pass upon this theory. For a long time (several days) prior to the accident defendant’s agent Labe did not visit the plane, yet he knew that mechanics had been working on its generator and running the engines. Under these circumstances clearly it was his duty on the approach of the storm, of which he had timely warning, to inspect the aircraft and make certain that it was secure. Had he made this inspection he could have reset the brakes if they had been released by the mechanics or could have tied down the plane if the brakes were defective. He failed in this duty, and his failure is attributable to his principal, the defendant.
 

 The defense that the accident resulted solely from an act of God can not be maintained. Of course, the winds during the afternoon in question were exceedingly strong — 60 to 70 mph. But all of the experts agree that in winds of that velocity the plane would not roll if its parking brakes were locked and functioning. On the other hand winds of 25 to 30 mph, according to the evidence, would roll the plane with its brakes unlocked. Concurring with the; strong winds to cause the accident, it logically follows, was the failure of duty on the part of the defendant to properly secure its plane.
 

 An act of God in the legal sense— that which will excuse the discharge of a duty and relieve a defendant from liability for injury — is a providential occurrence or extraordinary manifestation of the forces of nature which could not have been foreseen and the effect thereof avoided by the exercise of reasonable prudence, diligence and care or by the use of those means which, the situation renders reasonable to employ.. 1 Corpus Juris Secundum, verbo Act of God, page 1425, Holden v. Toye Brothers Auto and Taxicab Company, 1 La.App. 521. “Fortuitous event is that which happens by a cause which we can not resist.” Revised Civil Code Article 3556, paragraph 15. In the instant case, as shown above, the strong winds could be and were foreseen and, with respect to the accident and injury, could have been resisted by the exercise of reasonable prudence and diligence.
 

 The award of $6814.40 for physical damages was based on an estimate, submit
 
 *377
 
 ted by George A. Potter, an aviation repair man offered as a witness by plaintiff. Two other equally reputable repair men, R. W. Magee and Frank Gear, testified as witnesses for defendant and estimated the amount of such damages at $2850 and $2600 respectively. We can not say that the district court erred in accepting Potter’s estimate and rejecting the others. That approved was submitted in writing and in much detail; the others were given verbally and without itemization. Defense counsel direct attention to the fact, on the other hand, that Potter’s written estimate was made subsequent to the hurricane of September, 1947, during which further damage resulted to the plane. But Potter insists that it covered only the July 29, 1947, damage, and his testimony is corroborated by each of the members of the plaintiff partnership.
 

 The item of $1050, allowed by the district court as loss of profits on a contracted commercial flight to Baltimore, Maryland, scheduled for the day following the accident, is not questioned by defendant here.
 

 In considering the answer to the appeal, under which plaintiff claims the additional sum of $6350 for further loss of earnings during the 74 days between the accident and the filing of this suit, we notice that the average monthly net income of plaintiff had been approximately $400 per month during the period of four months in which it had been operating; that approximately 30 days is required in making the repairs; and that considerable delay attends the obtaining of necessary parts and materials from the factory located in California. It seems only reasonable, in view of these circumstances, that plaintiff’s award should be increased to cover the loss of profits, based on its average monthly income, for the mentioned 30 days and for an additional 15 days during which parts and materials might be assembled.
 

 For the reasons assigned the judgment is amended by increasing the award in plaintiff’s favor from $7864.40 to $8464.40, and as thus amended, it is affirmed. Defendant shall pay all costs of both courts.
 

 O’NIELL, C. J., takes no part