WALES G. BRAMLETTE AND MAYBELLE BRAM-
LETTE, APPELLANTS, v. HARVEY L. TITUS
AND JENE TITUS, RESPONDENTS.

No. 3762

March 5, 1954.                    267 P.2d 620.

*Leslie B. Gray,* of Reno, for Appellants.

*E. P. Carville,* of Reno, for Respondents.

## OPINION

By the Court, BELFORD, District Judge:

Appellants were engaged in the cattle business in California and respondents were engaged in the same business in Nevada. In the fall of 1948 the parties entered into an oral agreement under the terms of which appellants were to deliver certain of their cattle to respondents' ranch where they would graze with respondents' cattle and be cared for by respondents. For this privilege appellants were to pay to respondents one dollar per head per month except for small calves.

The evidence is in sharp conflict as to the other provisions of the contract but an examination of the record discloses ample evidence to sustain the findings of the trial court as to what those provisions were. It is not necessary to cite authority supporting the well established rule that this court will not disturb the findings of the lower court where they find substantial support in the evidence.

The court below found that the parties agreed that if it became necessary to feed appellants' cattle respondents would be paid for such feed at the going price, they to use their own judgment as to the necessity of such feeding, and that it was further agreed that respondents would not be liable for any losses due to death, straying, theft and the like.

These findings are not only supported by the evidence but also by the logic of the situation. No cattleman of any experience would undertake to assume the cost of unlimited supplementary feeding or to insure the return of all the cattle[1] for the payment of one dollar per head per month.

According to the agreement appellants delivered to respondents 258 cows, 92 calves and 7 bulls. Respondents grazed and fed said cattle from September of 1948 until June of 1950. When the animals were returned to appellants at that time 96 head were missing. Appellants brought their action for the value of these cattle, the value of calves allegedly produced by their cattle but not delivered to them, damages for the failure to care properly for the calves which were delivered to them, and for the reasonable cost of searching for their cattle.

---

[1]At the oral argument a map was displayed and referred to by both counsel. This indicated the range in question extending northeasterly and southwesterly for a distance of 30 or 40 miles or more, with a varying width of 10 to 15 miles. Mr. Bramlette gathered some of his cattle as far as some 30 miles north of this extensive range. It was all unfenced.

Appellants' first cause of action sounds in contract and is based upon the failure of respondents to redeliver all the cattle delivered to them. Even in an ordinary bailment the bailee is not an insurer of the goods and he is not liable to the bailor if they are lost or destroyed without his fault. 8 C.J.S., Bailments, sec. 37, p. 308. An agister's liability is no greater.

"The particular kind of bailment under which a man, for a consideration, takes in cattle to graze and pasture on his land is technically termed an agistment. An agister is bound to take reasonable or ordinary care of the animals committed to his charge; but in the absence of a special contract, he is not an insurer of their safety and, in the event of loss, is liable only on proof of negligence or want of ordinary care on his part." 2 Am. Jur. 709. See also 3 C.J.S., Animals, sec. 13, p. 1100 and 1 Bacon Abr., 7th ed., 620.

Appellants quite correctly urge that when a bailor proves delivery to the bailee and the bailee's failure to redeliver, the burden of going forward with evidence shifts to the bailee. 8 C.J.S., Bailments, sec. 50, p. 341. However, the evidence shows that the cattle were lost through no fault of respondents and therefore appellants cannot recover on the contract.

Appellants' second cause of action is based upon the alleged negligence and carelessness of respondents in failing to care for the cattle properly and the resulting loss by reason thereof. The trial court found, and quite properly we think, that the loss of the cattle was not occasioned by any negligence of respondents.

The evidence establishes that the cattle were only in fair condition, at best, when they were delivered to respondents and that the winter of 1948–1949 was particularly severe. The snow conditions were so bad during that winter that the cattle loss was far higher than

could normally be expected. A. F. Bordoli, whose cattle ranch adjoined that of respondents' and who used the winter range in common with them, testified that his loss during that winter was 25 percent above normal with a total loss of about 33 percent. The trial court found that the loss of appellants' cattle was caused by their condition when delivered to respondents and the winter conditions described above. This finding is amply supported by the evidence.

The third cause of action is based upon the failure of respondents to deliver the number of calves that would normally have been produced by appellants' cattle and upon their negligence in failing to care properly for the calves that were delivered. As pointed out in the opinion of the lower court, the evidence is insufficient to establish an approximate number of calves that were lost and equally insufficient to establish negligence upon the part of respondents.

The fourth cause of action is based upon the reasonable value of the time and labor expended by appellants in rounding up their cattle in April, May and June, 1950. Appellants' evidence on this point is to the effect that respondents agreed to gather appellants' cattle at any time without charge; that upon being informed that appellants desired to ship their cattle late in April, 1950, respondents stated that there were from 150 to 200 head at the ranch; that Mr. Bramlette went to respondents' ranch in April but that the cattle had been moved 16 miles on their way to summer range. Testimony on behalf of respondents was to the effect that appellants were advised that the cattle were rounded up in June and October; that if appellants' cattle were gathered at these times, no charge would be made but that gathering at other times would have to be paid for. On this state of the record the trial court found in favor of respondents as to this cause of action. Not only is there substantial evidence to support this finding but the low

monthly charge per animal compared to the cost of rounding up cattle scattered on a very large range lends considerable weight to respondents' contentions.

By counterclaim respondents asked for the cost of feeding appellants' cattle 120 tons of hay at $35 per ton and 200 sacks of cottonseed cake at $5 per sack. The lower court, upon ample evidence, found that the cattle were so fed, that such feeding was necessary and entered judgment in favor of respondents for these amounts. We find no error in this holding.

The lower court denied appellants' motion for a new trial. One of the grounds upon which this motion was based was newly discovered evidence. The motion was supported by the affidavit of appellant Wales G. Bramlette. This recites that the evidence was not known to him and could not have been discovered by reasonable diligence at or before the time of the trial.

It then states that this evidence "will establish the facts that very few cattle were lost in the winter of 1948 and 1949 in the area of the Titus ranch and range; that many of my cattle were seen on the Titus ranch and range in the spring and summer of 1949 and that they were in good condition and that there was a good calf crop at the time." The affidavit continues:

"Affiant further states that he received the information and new evidence from one Frank K. Farnsworth on the 17th day of December, 1952; that now, the said Frank K. Farnsworth refuses to sign an affidavit thereof but I verily believe he would appear in response to a subpoena.

"Affiant further states that the Tonopah Times-Bonanza, during the period in question herein, contains articles supplied by the defendants which conclusively prove that there were no heavy losses at the Locke ranch and range."

In considering the propriety of the order of the trial court it must be borne in mind that a strong showing

must be made to warrant the granting of a new trial on this ground and that the matter is largely within the discretion of the trial court.

"On the other hand cases which require the granting of a new trial on the ground of newly discovered evidence are unusual and exceptional. Applications for such relief are looked on with distrust and disfavor, and must be granted with caution; and the newly discovered evidence is regarded with suspicion." 66 C.J.S., New Trial, sec. 101, p. 291.

"A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and the granting or denying of a new trial applied for on this ground is largely discretionary." 66 C.J.S., New Trial, sec. 201, p. 500.

The affidavit, so far as it concerns the information given by Farnsworth to the affiant was hearsay and therefore entitled to little, if any, weight. "Such sworn statements are mere hearsay and entitled to no consideration." Priest v. Cafferata, 57 Nev. 153, 60 P.2d 220, 221.

This evidence, if received, would be largely cumulative since Mr. Bramlette testified that his cattle were in good condition in the spring of 1949 and that Mr. Titus had told him that only three of his cows had been lost. In addition, if but few cattle had been lost in the vicinity of respondents' ranch and range, evidence of this fact could, in all probability, have been secured prior to trial. "A new trial is not warranted for newly discovered evidence where the movant might have introduced other and similar evidence at the trial * * *." 66 C.J.S., New Trial, sec. 102, p. 294.

The averments in the affidavit as to the articles in the Tonopah Times-Bonanza are conclusions only. The articles are not in the record and we have no means of

knowing what they contain. Their chief purpose as evidence is the impeachment of Mrs. Titus with reference to her testimony as to cattle losses, testimony that was corroborated by other witnesses. The granting of a new trial under these circumstances is not favored.

"By a strong line of authorities it has been held that, where newly discovered evidence could serve only the purpose of impeachment, it will not constitute grounds that will warrant the court in granting a new trial." Whise v. Whise, 36 Nev. 16, 131 P. 967, 969, 44 L.R.A., N.S., 689.

In addition the articles were matters of public record. Secs. 2140 and 2141, N.C.L.1929. "The discovery after trial of  *  *  *  any other matter of public record ordinarily is not ground for a new trial unless, on diligent search in the proper office, such record was not discovered before the trial." 66 C.J.S., New Trial, sec. 107, p. 306.

On the hearing of the motion appellants asked leave to file additional affidavits which was refused. This matter was almost entirely within the discretion of the trial court. 66 C.J.S., New Trial, sec. 176, p. 429.

As we find no error in the record, the judgment and order appealed from are affirmed with costs to respondents.

EATHER, C. J., and BADT, J., concur.

MERRILL J., being disqualified, the Governor designated Honorable John S. Belford, judge of the Second Judicial District, to sit in his place.