112 So.2d 326

**CENTRAL AVIATION COMPANY**

v.

**William Gordon PERKINSON, Jr., et al.**

**6 Div. 295.**

Supreme Court of Alabama.

May 21, 1959.

198

Mead & Norman and Marshall H. Fitz-patrick, Birmingham, for appellant.

Rogers, Howard & Redden, Birmingham, for appellee.

STAKELY, Justice.

This suit was instituted by William Gordon Perkinson, Jr., and Robert Edmund Kieran, as owners of an aircraft or plane known as Swift 80876, against Central Aviation Company, a corporation, for damages from a windstorm to the plane by reason of the failure of the defendant to keep the plane securely tied down at the Municipal Airport of Birmingham, Alabama. Trial of the case resulted in a verdict and judgment for the plaintiff for $2,350. Motion for a new trial was overruled. This appeal followed.

The case was tried on Count 1 as amended and on Count 2. The allegations of Count 1 as amended show that the cause of action expressed is one of assumpsit for breach of an agreement to keep the airplane securely tied down when it was not in use. The allegations of Count 2 of the complaint show that it is founded in negligence for breach of a contractual obligation to keep the plane tied down when it was not in use. The court overruled the demurrers to both of these counts. Count 1 as amended shows that the plaintiffs were co-owners of a certain airplane and that on and prior to August 19, 1956, the defendant, Central Aviation Company, for a consideration of $10 per month agreed to provide space for the airplane when it was not in use at the Municipal Airport in Birmingham. The count contains the following averment: "* * * and expressly or impliedly agreed to keep said Swift 80876 securely tied down when not in use. * * *" It is claimed that in the count there is a disjunctive alternative averment of the contractual obligation involved and that under the Alabama cases the count being in the alternative and in this way attempting to present two causes of action in the same count, both alternatives must present a cause of action or the count will be held to be bad. In other words, in such a case the count can be no stronger than its weakest alternative and if one of the alternatives fails to present a cause of action the

other will be held to be bad. Sloss-Sheffield Steel & Iron Co. v. Sharp, 156 Ala. 284, 47 So. 279, 280; Gulf, Mobile & Ohio R. Co. v. Williams, 251 Ala. 516, 38 So.2d 334; Peck v. Henderson, 218 Ala. 233, 118 So. 262.

■ There is a considerable discussion in briefs as to whether or not the count is good or bad on the demurrer. We think, however, that it is sufficient to say that even if the demurrers were well taken (and we are not deciding to that effect), the overruling of the demurrers was error without injury since Count 2 of the complaint was based on the same occurrence as Count 1 and claimed the same damages. The verdict in the case was a general verdict and did not refer to the two counts separately. It is a well established rule in this jurisdiction that the overruling of a demurrer to one count of the complaint, even though the count is demurrable, where there is another sufficient count in the same complaint presenting the same claim and involving the same evidence, is error without injury where there is a general verdict referable to either count. Hamilton v. Browning, 257 Ala. 72, 57 So.2d 530; Brush v. Rountree, 249 Ala. 567, 32 So.2d 246. The trial court overruled demurrers to Count 2 of the complaint in the instant case and this ruling is not argued on appeal. It appears to be conceded that Count 2 is a count sufficient to sustain the verdict.

Assignment of error is based on the overruling of the defendant's motion for a new trial. A number of grounds of the motion for a new trial raise the question of the sufficiency of the evidence to support the verdict. Since all of these grounds present the same question, we will consider them together.

■■ Verdicts are presumed to be correct and no ground for a new trial is more carefully scrutinized or more rigidly limited than the ground that the verdict is contrary to the evidence. Hamilton v. Browning, supra; Smith v. Smith, 254 Ala. 404, 48 So.2d 546; Cobb v. Malone, 92 Ala. 630, 9 So. 738. When the trial judge overrules a motion for a new trial based on the insufficiency of the evidence to support the verdict, the presumption in favor of the correctness of the verdict is strengthened. Authorities, supra.

However, the appellant first insists that there is no evidence of any agreement between the plaintiffs and the defendant relative to the tying down of the airplane of the plaintiffs. The evidence is undisputed that the defendant was engaged in the business, among other things, of providing facilities where owners of light airplanes could park their aircraft upon the payment of certain sums to the defendant. The "parking" facilities provided by the defendant were, however, more than merely a vacant space for a plane to occupy. It was a paved surface equipped with "tie-down" rings arranged in a particular pattern. Ropes were attached to these rings, which were in turn attached to the airplanes to insure that they remain stationary while on the ground. The tie-down service was the essence of the defendant's business because without this a parking space would be of little value to the airplane owner. Airplanes, due to their nature and construction, must be moored while not attended to prevent their movement, which could be expected to produce damage to the aircraft.

The testimony of the plaintiff Kieran, which was not disputed, showed that such an arrangement as this was the usual and ordinary facility provided by businesses like the defendant operates for the parking of airplanes. According to his testimony it was shown that the aircraft was moved into place and anchored by employees of the defendant. These employees were known as "line boys." They were employed by the defendant to perform the task of tying down airplanes which were parked at the facilities of the defendant.

■ From the foregoing facts and circumstances it is obvious that the "tie-down" facilities were a material service the plaintiffs purchased from the defendant. We consider that from the foregoing facts there was sufficient evidence on which the jury could find a contract between the parties.

It is insisted by the appellant, however, that there is no evidence of any breach of contract or negligence on the part of the defendant which occasioned the damage to the aircraft of plaintiffs. Without dispute the damage to the aircraft occurred on Sunday, August 19, 1956. The proof showed considerable damage to the plane. Prior to that time the plane had last been flown on the previous Thursday, three days before the damage occurred. On this occasion when the plane was last flown the plaintiff Perkinson brought the plane to defendant's ramp where he turned it over to the employees of the defendant for servicing and anchoring. The employees of defendant gassed the plane and pushed it to the tie-down spot and tied it down.

The aircraft was damaged on August 19, 1956, when the wind during a thunderstorm blew the plane from its mooring at the facilities of defendant. When appellees first examined the plane after the thunderstorm they found the rope attached to the right side of the plane had been broken. On the left landing gear of the plane there was attached a larger rope which had no break in it. The obvious explanation was that the knots on it had slipped. The rope attached to one side of the plane was longer than the rope attached to the other side. Both of the ropes appeared to be weatherbeaten and frazzled or frayed at the break. Charles F. Bradley, the meteorologist in charge of the United States Weather Bureau Station at the Municipal Airport in Birmingham, which station is located about one hundred yards from the premises of the defendant, testified to certain facts as disclosed by the official records of his office.

We consider from the testimony of this witness that it is apparent that the phenomenon which occurred at the Birmingham Municipal Airport on August 19, 1956, was in no sense unusual. Thunderstorms occurred at that location on an average of more than one per week during the entire year and that average was also typical of previous years. On five occasions prior to this date during the year 1956, sustained wind velocities had been recorded far in excess of the sustained wind velocity of thirty-five miles per hour on this occasion. Similar recordings had been made in three previous years, including two during the month of August. Such high winds are usually accompanied by gusts in excess of the sustained velocities. It seems to us that the defendant knew or in the exercise of reasonable diligence should have known about these wind conditions at the place where he carried on his business.

■ Since defendant knew or should have known of the frequency of thunderstorms and high winds at the Municipal Airport it was his duty to his customers to provide adequate facilities to protect their aircraft from damage. In the case at bar the precaution which the defendant was under a duty to take was to supply adequate ropes of sufficient strength to withstand normal and usual winds and to follow proper procedure in the use of these ropes in the knots used to insure that they would not come unfastened. It seems to us that from this evidence it is obvious that the defendant failed in his duty to protect against a foreseeable danger. It further seems to us that ropes of sufficient strength, whether from age or otherwise, and proper tying procedures were not utilized on the plane of the plaintiffs. The fact that other similar aircraft on the same line with the plaintiffs' aircraft did not break away from their moorings indicates that inadequate equipment or procedures

were employed on the aircraft of the plaintiffs. This fact is illustrated by the photographs introduced in evidence by the plaintiffs showing the broken rope, the rope in which there was no knot, and the difference in length of the two ropes. In our judgment the jury could properly find that the appellant was negligent in its conduct toward the appellees and that it failed to provide the service promised.

We have been unable to find in this jurisdiction a case similar to the case at bar. However, there was decided in Mississippi a case which appears to be exactly similar to the case at bar. We refer to the case of City of Jackson v. Brummett, 224 Miss. 501, 80 So.2d 827, 829. In affirming a judgment for the plaintiff the Mississippi Supreme Court said:

> " * * * The jury was amply warranted in finding that the damage to appellee's airplane was not due exclusively to natural causes, and that it could have been prevented by the exercise of reasonable care and foresight on the part of the City in providing adequate ropes to tie the plane down and by the exercise of ordinary care in that respect."

Another case factually analogous to the instant case is Cachick v. United States, D.C., 161 F. Supp. 15. In that case, a case under the Federal Torts Claim Act, 28 U.S.C.A. §§ 1346, 2671 et seq., the plaintiff was injured when the stand in which she was sitting to watch the military exercise at the invitation of the defendant was blown over during a thunderstorm. The Court in that case held that the defendant was required to use reasonable care to guard against forces of nature which could have been reasonably foreseen. The evidence showed that the injury occurred in the month of July, which was the month in which thunderstorms occurred with the greatest frequency in that area. It was further shown that the winds on the particular occasion were not unusual or unprecedented for winds occurring in thunderstorms in that area. In entering a judgment for the plaintiff the Court said:

> " * * * The defendant was negligent in failing to properly construct the ladies' stand safely and securely in place so as not to be blown over by the windstorm of common and usual proportions in that community * *." 161 F.Supp. 19.

Appellant insists that the damage to the appellee's airplane was the result of an act of God. An act of God has been defined as "such an unusual and extraordinary manifestation of the forces of nature that it would not under normal conditions have been anticipated or expected." Louisville & N. R. Co. v. Finlay, 237 Ala. 116, 118, 185 So. 904, 905. In this case this court said:

> " * * * The rule of exemption from liability, if the loss is the result of an 'act of God,' is founded upon reason and justice that one should not be held responsible for that which could not have been *reasonably anticipated.* * * *" (Emphasis supplied)

As we have undertaken to point out, the occurrence involved in the case at bar was not such an unusual and extraordinary occurrence. It was not an occurrence which could not have been reasonably anticipated. The evidence shows that there was an average of sixty-six thunderstorms each year in the vicinity. It is common knowledge that thunderstorms are usually accompanied by high winds. The damage involved occurred in the month of August, when temperatures are high. High temperatures are a factor in thunderstorms. The wind velocity recorded on the particular date involved was less than wind velocities recorded on at least five other occasions in prior years. We think the proper conclusion to be drawn from a consideration of all the evidence is that the wind which caused the damage to the airplane of the plaintiffs on this occasion was

a usual and ordinary occurrence which the defendant could have anticipated.

We conclude that the jury was justified in finding that the damage to the airplane of the plaintiffs was not due to an act of God, but was the result of a normal and usual occurrence which the defendant could have anticipated and prevented by the exercise of due care.

One of the grounds for new trial attacks the court's ruling in sustaining the objections of the plaintiff to the hypothetical question asked the witness Bradley. This question seeks the opinion of the witness of wind velocity based upon certain damage observed in the vicinity. We find no error in this ruling. The witness had been qualified as an expert meteorologist, but the answer to this question would require expert knowledge in other fields. What force it would take to tear a piece of roofing off a building, break ropes, move blast fences, etc., would require extensive and intensive knowledge of the composition, construction and tensile strength of the items involved. It would require also a thorough familiarity with each item damaged prior to the thunderstorm. There is no proof that the witness had training in these fields, nor was he shown to have the requisite knowledge about the construction, location and composition of each item prior to the thunderstorm. It is settled that an expert may not testify to his opinion on matters outside of his field of training and experience. Capital Motor Lines v. Gillette, 235 Ala. 157, 177 So. 881; Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334.

We see no reason to discuss other grounds on which the motion for new trial was based, as we find no merit in them.

It is our conclusion that the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.