ALAMO AIRWAYS, INC., APPELLANT, v.
ROLAND I. BENUM, RESPONDENT.

No. 4498

ROLAND I. BENUM, APPELLANT, v.
ALAMO AIRWAYS, INC., RESPONDENT.

No. 4510

September 20, 1962                                374 P.2d 684

*Morse & Graves* and *Lee R. Rose,* of Las Vegas, for Appellant.

*Stewart, Horton & McCune,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

The main problem presented by the cross-appeals in this case is whether, in a bailment for hire, the defendant bailee had sustained the burden of proving that damage to the bailed airplane was due to causes consistent with due care on his part. Other questions relating to the trial court's admission and exclusion of evidence are likewise determined. The parties are referred to in their abbreviated names.

Benum, plaintiff below, was the owner of a light airplane, a 1947 Stinson, which he delivered to defendant Alamo, a flying service operator, for the purpose of storage. The parties agree that the storage arrangement constituted a bailment for hire, the bailor paying an agreed sum as monthly rental, in consideration of which the bailee was to store the airplane in the bailee's open "tie-down area" on McCarran Field near Las Vegas. Benum taxied the plane to a convenient point, whereupon Alamo's employees removed it to the tie-down area and performed the tie-down procedures. The purpose of mooring or tying down aircraft is to prevent their being blown about and damaged by wind. The tie-down area is equipped with several parallel steel cables stretched along the ground and anchored at each end and at 30-foot intervals to underground "deadmen." The planes are parked abreast. A chain is attached to the cable by means of an S-shaped hook and extended upward to where it is attached by a similar S-shaped hook to the mooring fittings or "tie-down rings" on the underside of the aircraft's wing or strut. The length of the chain is adjusted to the demanded length and for tautness by attaching the S-hook to the

mooring ring on the plane and fastening the chain to the cable. The other wing and the tail are similarly fastened down.

The morning of July 28, 1958, was calm. Hourly readings by the United States Weather Bureau at the airport, a short distance from where the planes were moored, registered from calm to ten knots an hour. At noon it was again blowing five knots and characterized as light. A thunderstorm, typical to a July day, came up around noon or one o'clock "as is normal in such thunderstorm conditions." Such storms are common in that area at that time of year. The United States Weather Bureau attendant characterized it as "a common thunderstorm." The weather bureau reported early that morning that there would be winds all that day. On the preceding day, July 27, it reported that there would be high winds all day on the 28th. At 12:45 p. m. the wind registered 41 knots and at 1:25 p. m., 40 knots. Plaintiff's airplane was torn loose from its moorings, lifted into the air by the wind, and turned over upon its back, resulting in severe damage. Two other planes owned by Alamo were likewise torn loose but remained upright. It was demonstrated both by testimony of witnesses and photographs of the mooring chains that the S-hooks that were engaged in the mooring rings on both wings had been stretched out almost straight. The mooring rings attached to the wings or struts, while elongated, had remained fast. Nothing in the evidence indicates that Benum's plane would have been torn loose if the S-hooks had remained intact. A typical chain was introduced in evidence. It indicates that the S-hook appears to be of a different material than the links of the chain. No evidence was offered concerning the nature or strength of the material in the S-hook.

1. A bailee for hire is not an insurer of the bailed property and is not liable to the bailor for its loss or destruction without the bailee's fault. Bramlette v. Titus, 70 Nev. 305, 267 P.2d 620. However, where the property is delivered in good condition to the bailee

and returned by him in a damaged state, a presumption arises that the damage is due to the bailee's fault, and unless he sustains the burden of proving that such damage was due to other causes consistent with due care on his part, the bailor becomes entitled to judgment as a matter of law. Gaudin Motor Co., Inc. v. Wodarek, 76 Nev. 415, 356 P.2d 638; Manhattan Insurance Co. v. Grand Central Garage, 54 Nev. 147, 152, 9 P.2d 682; Donlan v. Clark, 23 Nev. 203, 205–206, 45 P. 1; Annot., "Liability of bailee of airplane for damage thereto," 17 A.L.R.2d 913.

Alamo contends, and Benum concedes, that the bailee, in the absence of special contract, is held to the exercise of ordinary care in relation to the subject matter thereof. This has been applied to the bailment of airplanes in Meyer v. Moore, 329 P.2d 676 (Okla. 1958); Shephard v. Graham Bell Aviation Service, 56 N.M. 293, 243 P.2d 603; Odle v. Dunbar, 129 Cal.App.2d 466, 277 P.2d 418; Zanker v. Cedar Flying Service, 214 Minn. 242, 7 N.W.2d 775; Southern Air Transport v. Gulf Airways, 215 La. 366, 40 So.2d 787; City of Jackson v. Brummett, 224 Miss. 501, 80 So.2d 827; and Central Aviation Co. v. Perkinson, 269 Ala. 197, 112 So.2d 326. All these cases involved the sufficiency of the respective tie-down systems of the defendant and all involved cases in which the plane was torn from its moorings by high winds, which it was the duty of the bailee to anticipate. In all cases judgment in favor of the bailor was sustained. Alamo seeks to distinguish these cases because in each of them there was a clear breach of the duty owed by the bailee which it claims is lacking in the instant case; that in City of Jackson v. Brummett, supra, and in Odle v. Dunbar, supra, the tie-down ropes used were rotten; that in Central Aviation Co. v. Perkinson, supra, the tie-downs were ropes, not chains; that in Southern Air Transport v. Gulf Airways, supra, no tie-downs were used, the parking brakes were not locked, nor were the wheels blocked; that in Meyer v. Moore, supra, the tie-down chains had

been permitted to become rusted, corroded, worn, weakened and dilapidated. It is true that in those cases the precise degree and the precise nature of the bailee's negligence showed some variation from Alamo's negligence in the present case. Yet in principle there is no distinction in the failure of a rope (as distinguished from a chain), a weak rope (as distinguished from a sufficiently strong rope or a chain), or a rusted or corroded chain (as distinguished from a chain equipped with an S-hook that was not strong enough to withstand the strain). In each case, as in the present case, the bailee's negligence consisted in using tie-downs inadequate to withstand the pressure of anticipated winds.

While Alamo points to some testimony to the effect that the high wind was a "twister" and that it was an unusually strong wind, there was much substantial evidence to the contrary. The conflict on this point was resolved in Benum's favor and it is not our province to interfere. Where it is contended that the damage resulted from an act of God, such act, to avail the defendant, must be such a providential occurrence or extraordinary manifestation of the forces of nature that it could not reasonably have been foreseen, and the effect thereof avoided by the exercise of reasonable prudence, diligence and care, or by the use of those means which the situation renders reasonable to employ. Southern Air Transport v. Gulf Airways, 215 La. 366, 40 So.2d 787. In that case, as here, it was said that the strong winds could be and were foreseen. To like effect are City of Jackson v. Brummett, 224 Miss. 501, 80 So.2d 827, and other cases. Alamo's reliance on its showing—that its manager and his crew had spent many hours on the day in question in inspecting all the planes in the tie-down area to be assured that they were all properly tied down against the wind—cannot prevail against the court's finding, supported by substantial evidence, that the tie-downs were inadequate to withstand a foreseeable wind.

2. Alamo contends, however, that the trial court went far beyond requiring Alamo to exercise reasonable and ordinary care under the circumstances but required it to exercise "the highest degree of care" toward the bailed airplane. Appellant's reference is to the language used by the trial court when at the conclusion of oral arguments following the trial, the court said: "The defendant being in the business of taking care of airplanes is held to know their sensitivity; that in this area of gusty winds every conceivable precaution must be taken to what would otherwise be an extraordinary degree or in the business of taking care of planes in an ordinary degree. Now, then, they must anticipate or foresee what could happen in an act of God case and guard against it so long as airplanes are concerned, whether it be by bigger and stronger chains or double or triple chains. These, this Court holds, that the defendant must do. Here the tie-downs were inadequate both in the method used and the number of chains used. The tie-downs gave to the winds, not the plane itself: * * *."

We construe the foregoing statement simply as the court's conclusion that the defendant did not exercise reasonable care in storing the plane, because under the evidence the tie-downs were inadequate. When the court concluded, "the tie-downs gave to the winds, not the plane itself," it told the whole story. Ordinary and reasonable precautions would require the use of S-hooks that would not straighten out and give way by reason of a foreseeable wind pressure applied to the plane. The court's reasoning simply indicated its holding that ordinary care applied to outdoor storage of, let us say, a heavy wagon would not be sufficient as applied to outdoor storage of an airplane. Such reasoning is logical and correct. The court's formal finding was that "defendant negligently failed to properly tie down said airplane as a proximate result of which said airplane was blown over by the wind and greatly damaged."

3. Alamo asserts error in the court's exclusion of evidence regarding the standard of care used by other operators "in the Las Vegas area."

John Williard Matheson, vice president and general manager of Alamo Airways, was asked: "Q. Have you flown to a number of airports around this area? A. Yes, I have. Q. Do you know what type of tie-down systems they use?" Objection was made on the ground of incompetency and irrelevancy. Appellant argued that the type of the tie-down system used by other airports in the area would be relevant and material to the question whether defendant here was negligent or not. The court sustained the objection. Alamo contends that if the methods used by it were the same as those used in other airports in the vicinity, it would indicate that it was not guilty of a lack of due care, in other words, that proof of custom was proper. The trouble is that the question was never properly presented to the court. The witness might have answered "no," or he might have said "yes," and then on voir dire might have admitted that he knew in general the system used by other airports but did not know the size or the strength of the material used in the chains or in the hooks that engaged the mooring rings on the plane. The witness would have had to be possessed of such knowledge to make his testimony relevant.[1] This is particularly so in view of the evidence (the photographs of the chains and the hooks and the actual chain received in evidence) which showed the hooks almost completely straightened out. Further, the witness might have had no knowledge whether the strong winds prevailed in the other airports as against the evidence in the instant case showing that a thunderstorm condition with strong winds was foreseeable on the day in question. No offer of proof was requested or made, and we will not speculate as to what the witness's testimony might have been. NRCP 43(c). Under the circumstances, the assignment is without merit.

---

[1] At the oral argument Alamo maintained that it had theretofore qualified the witness. He had testified to his experience at the Lemoore Air Base, Lemoore, California, and the Sparks airport in Sparks, Nevada. He also referred to an airport in Apple Valley in California. The California airports are on the other side of the Sierras. The Sparks airport is 500 miles away from McCarran Field. No similarity of wind conditions can be presumed.

4. Alamo assigns error in the court's admission of testimony that defendant, subsequent to the accident, partially changed its tie-down methods. The defendant's manager had testified to the tie-down method it used. On cross-examination he was asked whether the defendant had now changed that method. The overruling of an objection is the error assigned. Appellant cites Chicago, B. & Q. R. Co. v. Kelley, 74 F.2d 80 (CCA 8th, 1934), Anson v. Evans, 19 Colo. 274, 35 P. 47, and other authorities, to the effect that what was done afterwards could throw no light upon the question of the asserted negligence or lack of care at the time of the accident, and that it is error to admit evidence of what was done to guard against future accidents. Improvement of safety devices is not indicative of negligence, but merely of a desire to prevent future injury to person or property. Morse v. Minneapolis & St. L. Ry. Co., 30 Minn. 465, 16 N.W. 358 (and see McCormick, Evidence, 545, and 9 Hastings Law Journal, 316).

Later the witness was permitted to testify over objection that although at the time of the accident defendant was hooking all airplanes with the hook in the eye or mooring ring on the plane, this had since been changed by passing the loop of the cable through, then using the hook, "something like a cotter pin."

It is conceded that for many years in 47 states evidence of repairs, alterations, or other precautions taken after an accident has been held inadmissible either as proof of antecedent negligence or as an admission of negligence. The reason for the virtual unanimity is that the admission of such evidence would discourage all owners, even those who had been genuinely careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their own disadvantage, and that innocent persons would suffer by such refraining from improvements. 2 Wigmore, Evidence, sec. 283 (3d ed., 1940). Recognized exceptions to the rule, such as for purposes

of rebuttal or impeachment, have been severely criticized, although these exceptions have been approved in some 30-odd jurisdictions. Annot., 64 A.L.R.2d 1305. Interesting as the subject is, we need not pursue it. Virtually all the cases recognize the danger of admitting such evidence in cases tried to a jury. When so admitted, the jury must be instructed as to the limited purpose of the evidence. When tried to the court without a jury, the danger of such evidence is greatly diminished, if not entirely avoided. This is particularly so when, without such evidence, the record amply sustains the judgment. In the present case the court indicated when the objection was made that counsel had not qualified his question. We understand the court's meaning to be that counsel had not indicated that he limited his question to purposes of impeachment and not as proof of negligence. Hence the court was aware of the situation. This further appears from the proceedings on motion for new trial. This is a classic case for application of the rule that if there is sufficient competent evidence to support the findings, the judge will be presumed to have disregarded the inadmissible evidence, if it be determined such, and relied upon the competent evidence. Green v. Henderson, 66 Nev. 314, 208 P.2d 1058; Southern California Jockey Club v. California Horse Racing Board, 36 Cal.2d 167, 223 P.2d 1; Odom v. First National Bank of Arizona, 85 Ariz. 238, 336 P.2d 141. We must therefore reject this assignment of error.

Other contentions of appellant Alamo do not require consideration.

As first noted, Benum filed a cross-appeal. The court rendered a judgment in favor of Benum in the sum of $1,895, which it arrived at by applying 20 percent depreciation against the original cost of $3,200 and reducing the balance by sale of the salvage for $665. Benum properly asserts that there is nothing in the record to justify the application of the court's method of deducting depreciation. However, there is direct evidence in the record that the value of the airplane before

the accident was $2,500. Applying against this the salvage of $665, the evidence clearly supported a judgment in favor of Benum for $1,835. Benum is in no position to complain because the court allowed him $60 in excess of the amount of the judgment to which he was entitled. In other words, he was in no way aggrieved by the method used by the court. Alamo did not raise the point of the excessive judgment and stated during the oral argument that its appeal did not question the discrepancy.

As to both appeals, the judgment is affirmed. No costs are allowed.

McNAMEE and THOMPSON, JJ., concur.